# STATE OF MICHIGAN

# COURT OF APPEALS

---

MEREDITH SUMMER,

        Plaintiff-Appellant,

V

SOUTHFIELD BOARD OF EDUCATION, and
SOUTHFIELD PUBLIC SCHOOLS,

        Defendants-Appellees.

FOR PUBLICATION
June 2, 2015
9:05 a.m.

No. 320680
Oakland Circuit Court
LC No. 2013-135991-CL

---

Before: WILDER, P.J., and OWENS and M. J. KELLY, JJ.

WILDER, P.J.

Plaintiff, Meredith Summer, appeals as of right an order granting summary disposition in favor of defendants, Southfield Board of Education and Southfield Public Schools. We affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. FACTS

This action arises out of a teacher layoff dispute. According to plaintiff's complaint, plaintiff began working as a teacher in the Southfield Public Schools system in 1999. During the 2010-2011 school year, plaintiff was involved in an ongoing dispute with a colleague, which ultimately resulted in plaintiff filing an internal complaint in the spring of 2011 due to the harassment that she experienced from the other employee. According to plaintiff, defendants failed to provide any information regarding the results of the investigation that followed plaintiff's complaint.

At the beginning of the 2011-2012 school year, an administrator for defendants allegedly informed an employee that she "would not have to worry about [plaintiff]" after the 2011-2012 school year. According to plaintiff, defendants subsequently observed her performance in the classroom, but never shared with her the results of the observation. At the end of the school year, defendants concluded that plaintiff's teaching performance that year was "minimally effective," but despite this evaluation rating, they did not provide a "plan of improvement" for plaintiff or otherwise give plaintiff an opportunity to improve the purported deficiencies in her performance. At the end of the 2011-2012 school year, plaintiff was laid off by defendants. According to plaintiff, she was the only teacher in the school to receive a "minimally effective"

-1-

rating. Despite being laid off at the end of the 2011-2012 school year, plaintiff was subsequently hired to teach summer school during the summer of 2012.

On August 30, 2013, plaintiff filed a complaint alleging that she was laid off in violation of the Revised School Code, MCL 380.1 *et seq*. Plaintiff asserted that while defendants had purportedly "developed a system to effectuate standards for placements, layoffs, and recalls," which—under the requirements of MCL 380.1249—"was supposed to be based on teacher effectiveness and be rigorous, transparent, and fair," nevertheless, defendants' actions in laying off plaintiff "were arbitrary, capricious, and in bad faith" in the following ways:

A. Defendants . . . retaliated against [plaintiff] by failing or refusing to share the results of her retaliation complaint [against another employee who had harassed plaintiff] despite the fact that she was the [c]omplainant;

B. Defendants . . . prejudged her evaluation when it decided, and declared that at the end of the 2011-2012 school year, people "would not have to worry about [plaintiff];"

C. Defendants . . . gave [plaintiff] a "Minimally Effective" evaluation based in part on [o]bservations that were never even shared with [plaintiff] and for which no written feedback was given;

D. Defendants . . . also harbored ill will towards the [plaintiff] based on incidents when she served as the union building representative[.]

Plaintiff also alleged that defendants provided no "Plan of Improvement[] and no opportunity to cure any alleged performance shortcomings" after it rated plaintiff as "minimally effective." Plaintiff's complaint requested a judgment 1) requiring defendants to recall her to her previous position, 2) requiring defendant to void and destroy her 2011-2012 school year evaluation, and 3) awarding money damages equaling her costs and attorney fees, and any other relief to which she was entitled.

Defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(4) (court lacks jurisdiction of the subject matter) and MCR 2.116(C)(8) (failure to state a claim on which relief can be granted). Defendants argued that jurisdiction over plaintiff's claim that her layoff decision was "arbitrary and capricious" or was made in bad faith rested exclusively with the Teacher Tenure Commission ("TTC"), because plaintiff's allegations amount to nothing more than a claim that the layoff decision constituted a subterfuge.[1] Likewise, defendants argued that the Michigan Employment Relations Commission ("MERC") has exclusive jurisdiction over plaintiff's claim arising out of her union activity. Alternatively, defendants argued that

---

[1] See our review of this Court's discussion of the "subterfuge" doctrine in *Baumgartner v Perry Pub Sch*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket Nos. 313945, 314158, 314696); slip op at __, *infra* at section V.B. of this opinion.

plaintiff's complaint was not properly before the circuit court because she had failed to exhaust her administrative remedies.

Defendants also presented four separate bases from which they argued the trial court should conclude that summary disposition for failure to state a claim was appropriate. First, defendants contended that plaintiff failed to set forth a cause of action under MCL 380.1248 because plaintiff admitted that she was laid off after being rated "minimally effective," did not allege that the evaluation process failed to follow the procedure required under the statute, and failed to make any allegation that she was laid off based on seniority or tenure status. Second, defendants argued that MCL 380.1249 does not establish a private cause of action for teachers against a school district, and, therefore, plaintiff failed to state a valid claim under MCL 380.1249. Third, defendants argued in the alternative that, even if plaintiff has a private cause of action under MCL 380.1249, plaintiff's allegation that defendants did not offer plaintiff a "Plan of Improvement" following her evaluation did not constitute a violation of MCL 380.1249, because Plans of Improvement were not required of the school district by statute until the 2013-2014 school year. Finally, defendants contended that plaintiff's allegation, that defendants denied her an opportunity to address shortcomings in her performance, failed to state a claim because plaintiff did not identify the particular statutory provision which they allegedly violated.[2]

In response, plaintiff argued that defendants' motion for summary disposition should be denied. Plaintiff claimed that facts supporting her allegations, if taken as true, articulated a colorable claim under the Revised School Code that defendants laid off plaintiff in an arbitrary and capricious manner and failed to utilize an evaluation procedure that was fair, open, and transparent. Additionally, plaintiff argued that, if the trial court concluded that plaintiff had not stated an actionable claim, she should be allowed, at the very least, to amend her pleadings. Second, plaintiff argued that it was evident from the plain meaning of the phrase "court of competent jurisdiction" in MCL 380.1248(3) that the Legislature intended to allow teachers to bring claims for reinstatement in the circuit courts of this state. Plaintiff also argued that a private cause of action could be stated under MCL 380.1249. Finally, plaintiff contended that defendants had mistaken her claim as one arising under the Public Employee Relations Act ("PERA") because she had alleged no cause of action related to her union status. In support of her position that she had stated a claim under MCL 380.1248 and MCL 380.1249, plaintiff also referenced the orders entered by Oakland Circuit Court Judge James Alexander in a similar case, which denied defendant Southfield Board of Education's motions for summary disposition and held that, in that case, the plaintiffs had stated a cause of action under both MCL 380.1248 and MCL 380.1249.[3]

---

[2] Defendants reiterated these arguments in their reply brief to plaintiff's response to their motion for summary disposition.

[3] Plaintiff further discussed the orders entered by Judge Alexander in her subsequent motion to supplement her response to defendants' motion for summary disposition. There she argued that defendants' motion for summary disposition should be denied based on Judge Alexander's denial

The trial court issued its opinion and order on February 12, 2014, granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(4) and (8). The opinion provided, in relevant part:

Plaintiff's Complaint states that she was laid off after she was rated "Minimally Effective." Plaintiff alleges that her rating was a subterfuge and that the real reason she was laid off was retaliation for an internal complaint about a co-worker. The Court finds that these allegations do not support a claim under MCL 380.1248, which requires the lay-off to be based on "teacher effectiveness." The Teacher Tenure Commission has jurisdiction over a claim that a teacher was laid off in bad faith and for a reason that is arbitrary and capricious. Because Plaintiff has failed to exhaust her administrative remedy by filing her claim with the Teacher Tenure Commission, summary disposition is appropriate. The Court finds that MCL 380.1249 does not create a cause of action under the facts presented. While this Court understands Plaintiff's desire for it to follow the ruling made by Judge Alexander, that decision is not relevant to this case because this Plaintiff was evaluated under the new system at the end of the 2011-2012 school year. Finally, the Court finds that Plaintiff's allegations regarding her status as a union representative must be brought before the Michigan Employment Relations Commission.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Williams v Enjoi Transp Solutions*, 307 Mich App 182, 185; 858 NW2d 530 (2014). Whether a trial court has subject-matter jurisdiction over a dispute is also a question reviewed de novo by this Court. *Forest Hills Coop v City of Ann Arbor*, 305 Mich App 572, 616; 854 NW2d 172 (2014). Summary disposition is appropriate pursuant to MCR 2.116(C)(4) when the trial court "lacks jurisdiction of the subject matter." MCR 2.116(C)(4); *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010). "For jurisdictional questions under MCR 2.116(C)(4), this Court determine[s] whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate . . . [a lack of] subject matter jurisdiction." *Packowski*, 289 Mich App at 138-139 (quotation marks and citation omitted; alterations in original).

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. Summary disposition under subrule (C)(8) is appropriate if no factual development

_____

of defendant Southfield Board of Education's motions for summary disposition in the other case, in which defendant Southfield Board of Education challenged whether the plaintiffs could state a claim under the same provisions of the Revised School Code at issue in the instant case. Defendants argued that Judge Alexander's orders were not relevant to the instant case because the plaintiffs in the other case were laid off following the 2010-2011 school year, whereas plaintiff was laid off after the 2011-2012 school year, at which time a new evaluation procedure was in place.

could justify the plaintiff's claim for relief." *Stone v Auto-Owners Ins Co*, 307 Mich App 169, 173; 858 NW2d 765 (2014) (quotation marks and citation omitted).

### III. THE 2011 AMENDMENTS TO THE REVISED SCHOOL CODE

Prior to the enactment of the "tie-barred" 2011 amendments to the Revised School Code,[4] the regulation of teacher layoffs was solely a matter of the collective-bargaining process and was subject to adjudication by the MERC. *Baumgartner v Perry Pub Sch*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket Nos. 313945, 314158, 314696); slip op at 2-3. "As such, challenges to layoff decisions were regarded as unfair labor practices, which would be a violation of PERA adjudicated by MERC." *Id*. at ___; slip op at 9. Additionally, the Teacher Tenure Act, MCL 38.71 *et seq*., previously included two provisions that provided a basis for the TTC to assert jurisdiction over some teacher layoff disputes. Under the former version of MCL 38.105, repealed by 2011 PA 101, tenured teachers could be terminated only "because of a necessary reduction in personnel," and they were entitled to be appointed to the first vacancy in any school district for which they were certified and qualified. Under MCL 38.121, any tenured teacher could "appeal to the tenure commission any decision of a controlling board under this act," including claims arising under former MCL 38.105. See *Freiberg v Bd of Educ of Big Bay De Noc Sch Dist*, 61 Mich App 404, 411-414; 232 NW2d 718 (1975), superseded by statute as noted in *Baumgartner*, ___ Mich App at ___; slip op at 9-10.[5] Accordingly, in a small number of cases, a plaintiff could assert a cause of action known as "subterfuge"—i.e., that an employment action was taken for ostensibly legal reasons, but was, in actuality, not done in "good faith as a 'necessary reduction in personnel' "—over which the TTC "ha[d] jurisdiction to determine, as a factual matter, whether the local school board took the action because of bona fide economic necessity." *Id*. at 413-414; see also *Baumgartner*, ___ Mich App at ___; slip op at 9-10.

However, under the 2011 Amendments to the Revised School Code, the Legislature (1) removed the subject of teacher layoffs from the collective-bargaining process, such that teachers could no longer raise challenges to layoff decisions with the MERC as unfair labor practices in violation of PERA, (2) required that layoff decisions be based on teacher effectiveness, and (3) established that the courts, not the TTC or any other administrative agency, have jurisdiction over layoff-related challenges. *Baumgartner*, ___ Mich App at ___; slip op at 10. Correspondingly, under the provisions of the Revised School Code in place at all times relevant to these proceedings, which included the 2011 amendments to the Code, the school districts are required to adopt a "performance evaluation system" that meets the following pertinent requirements:

---

[4] "When the 2011 Amendments were bills, each 2011 Amendment was linked with the others so that none could become law unless the others became law." *Baumgartner*, ___ Mich App at ___; slip op at 2 n 1. The 2011 amendments were contained in 2011 Public Acts 100, 101, 102, and 103. *Id*. at ___; slip op at 2 n 2.

[5] Because *Freiberg* was decided before November 1, 1990, it is not binding on this Court. MCR 7.215(J)(1).

(1) Not later than September 1, 2011, . . . with the involvement of teachers and school administrators, the board of a school district or intermediate school district or board of directors of a public school academy *shall adopt and implement for all teachers and school administrators a rigorous, transparent, and fair performance evaluation system that does all of the following*:

(a) Evaluates the teacher's or school administrator's job performance at least annually while providing timely and constructive feedback.

\* \* \*

(c) Evaluates a teacher's or school administrator's job performance, using multiple rating categories that take into account data on student growth as a significant factor. . . . If the performance evaluation system implemented by a school district, intermediate school district, or public school academy under this section does not already include the rating of teachers as highly effective, effective, minimally effective, and ineffective, then the school district, intermediate school district, or public school academy shall revise the performance evaluation system not later than September 19, 2011 to ensure that it rates teachers as highly effective, effective, minimally effective, or ineffective.

(d) Uses the evaluations, at a minimum, to inform decisions regarding all of the following:

(*i*) The effectiveness of teachers and school administrators, ensuring that they are given ample opportunities for improvement.

(*ii*) Promotion, retention, and development of teachers and school administrators, including providing relevant coaching, instruction support, or professional development.

\* \* \*

(*iv*) Removing ineffective tenured and untenured teachers and school administrators *after they have had ample opportunities to improve, and ensuring that these decisions are made using rigorous standards and streamlined, transparent, and fair procedures*. [MCL 380.1249(1), later amended by 2014 PA 257 (emphasis added).[6]]

Additionally, MCL 380.1248(1) and (3) provided, in pertinent part, the following requirements with regard to the basis on which all personnel decisions concerning teachers must be made:

---

[6] The 2014 amendments to MCL 380.1249 did not make any substantive changes to the statute that would affect the outcome of this case, but merely changed the applicable dates.

(b) Subject to subdivision (c), the board of a school district or intermediate school district shall ensure that the school district or intermediate school district adopts, implements, maintains, and complies with a policy that provides that all personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position, when conducting a recall from a staffing or program reduction or any other personnel determination resulting in the elimination of a position, or in hiring after a staffing or program reduction or any other personnel determination resulting in the elimination of a position, are based on retaining effective teachers. The policy shall ensure that a teacher who has been rated as ineffective under the performance evaluation system under [MCL 380.1249] is not given any preference that would result in that teacher being retained over a teacher who is evaluated as minimally effective, effective, or highly effective under the performance evaluation system under [MCL 380.1249]. Effectiveness shall be measured by the performance evaluation system under [MCL 380.1249], and the personnel decisions shall be made based on the following factors:

(*i*) Individual performance shall be the majority factor in making the decision, and shall consist of but is not limited to all of the following:

(A) Evidence of student growth, which shall be the predominant factor in assessing an employee's individual performance.

(B) The teacher's demonstrated pedagogical skills, including at least a special determination concerning the teacher's knowledge of his or her subject area and the ability to impart that knowledge through planning, delivering rigorous content, checking for and building higher-level understanding, differentiating, and managing a classroom; and consistent preparation to maximize instructional time.

(C) The teacher's management of the classroom, manner and efficacy of disciplining pupils, rapport with parents and other teachers, and ability to withstand the strain of teaching.

(D) The teacher's attendance and disciplinary record, if any.

(*ii*) Significant, relevant accomplishments and contributions. . . .

(*iii*) Relevant special training. . . .

(c) Except as otherwise provided in this subdivision, length of service or tenure status shall not be a factor in a personnel decision described in subdivision (a) or (b). However, if that personnel decision involves 2 or more employees and all other factors distinguishing those employees from each other are equal, then length of service or tenure status may be considered as a tiebreaker.

\* \* \*

(3) If a teacher brings an action against a school district or intermediate school district based on this section, the teacher's sole and exclusive remedy shall be an order of reinstatement commencing 30 days after a decision by a court of competent jurisdiction. The remedy in an action brought by a teacher based on this section shall not include lost wages, lost benefits, or any other economic damages.

## IV. THE CIRCUIT COURT HAS ORIGINAL JURISDICTION OF PLAINTIFF'S CLAIMS UNDER THE REVISED SCHOOL CODE AS AMENDED IN 2011

Plaintiff argues that the trial court erred in granting defendants' motion for summary disposition under MCR 2.116(C)(4) because the circuit court had original jurisdiction over her claims under the Revised School Code. We agree.

MCL 380.1248(3) provides a specific remedy for any teacher alleging a violation of MCL 380.1248: "If a teacher brings an action against a school district or intermediate school district based on this section, the teacher's sole and exclusive remedy shall be an order of reinstatement commencing 30 days after a decision by *a court of competent jurisdiction.*" (Emphasis added.) Likewise, in *Baumgartner*, ___ Mich App at ___; slip op at 14, this Court recently held, "If a teacher plaintiff claims that a school-district defendant violated [MCL 380.]1248 and [MCL 380.]1249, he must bring suit in a 'court of competent jurisdiction,' i.e., a court in the Michigan judiciary, not the [TTC], and seek the 'sole and exclusive remedy' under [MCL 380.1248]: reinstatement." See also *Baumgartner*, ___ Mich App at ___; slip op at 12. The Court also stated that "the [TTC] does not have jurisdiction over lay-off related claims, including those alleged to be a 'subterfuge,' because the layoffs of teachers are explicitly governed by [MCL 380.]1248 and [MCL 380.]1249 of the School Code—not the TTA." *Id*. at ___; slip op at 14. Therefore, under the clear holding of *Baumgartner*, a laid-off teacher must seek redress for claims arising under MCL 380.1248 and MCL 380.1249 with the judiciary of this state. *Id*. at ___; slip op at 12, 14. Accordingly, the trial court erred in concluding that it did not have jurisdiction over the claim and granting defendants' motion for summary disposition under MCR 2.116(C)(4).[7]

We further note that the trial court's finding that plaintiff's claims regarding her status as a union representative must be filed with the MERC misreads the complaint as filed. Plaintiff's complaint makes a single mention of her status as a "union representative," and it is evident that this reference was provided as background information regarding the harassment that she received from a coworker. Further, any ambiguity in the legal basis for plaintiff's claims was resolved in paragraph 26 of her complaint:

26. Therefore, *the practical effect* of the Defendant Southfield's action has been to violate the Plaintiff Summer's rights *in violation of the Revised School Code*. [Emphasis added.]

---

[7] We recognize that at the time of its ruling, the trial court did not have the benefit of this Court's opinion in *Baumgartner*.

-8-

Therefore, because plaintiff did not allege any claims related to her union status, the trial court's conclusion that plaintiff needed to bring such claims before the MERC was also in error.

## V. THE TRIAL COURT ERRED IN PART IN FINDING THAT PLAINTIFF FAILED TO STATE A CAUSE OF ACTION UPON WHICH RELIEF COULD BE GRANTED

Plaintiff argues that, because the allegations in her complaint established a cause of action under the Revised School Code, the trial court erred in granting defendants' motion for summary disposition under MCR 2.116(C)(8). We agree in part.

### A. THERE IS NO PRIVATE RIGHT OF ACTION UNDER MCL 380.1249

Prior to this Court's decision in *Baumgartner*, MCL 380.1249 was interpreted in *Garden City Ed Ass'n v Sch Dist of City of Garden City*, 975 F Supp 2d 780 (ED Mich, 2013). In *Garden City*, the plaintiff teachers' union filed a cause of action alleging one count of violations of the Revised School Code, MCL 380.1248 and MCL 380.1249, and one count of due process violations under the United States and Michigan constitutions. *Garden City Ed Ass'n*, 975 F Supp 2d at 781-782, 789. In analyzing the plaintiff's claim under § 1249, the court held that teachers had no private right of action pursuant to that section. *Id*. at 785. In support of this determination, the court found that there was no express language in the section providing a private right of action. *Id*. Instead, the court found that "there is a general enforcement provision that applies to the entire Revised School Code" and enforced the requirements of § 1249. *Id*. The court noted that the general enforcement provisions provide for criminal punishments for school officials who fail to perform under the code, MCL 380.1804, and for termination of school officials who violate a provision of the code, MCL 380.1806. *Garden City Ed Ass'n*, 975 F Supp 2d at 785. Additionally, under MCL 380.1704, a school district's receipt of state funding is expressly conditioned upon the school district's compliance with § 1249. *Id*. Further, the court reasoned that, when juxtaposed with § 1248, which does contain an explicit right of action, it was "obvious that if the Legislature had wanted to afford aggrieved individuals a private right of action for violation of section 1249 it easily could have done so." *Id*. at 786.

Although *Garden City Ed Ass'n* is not binding on this Court, we are persuaded by the district court's analysis. See *Truel v City of Dearborn*, 291 Mich App 125, 136; 804 NW2d 744 (2010). As observed by the *Garden City* court, it is evident that the Legislature provided a detailed enforcement scheme to ensure compliance with the Revised School Code, including compliance with § 1249. Notably, the plain language of § 1249 includes no reference to a private right of action. "[W]here a statute creates a new right or imposes a new duty unknown to the common law and provides a comprehensive administrative or other enforcement mechanism or otherwise entrusts the responsibility for upholding the law to a public officer, a private right of action will not be inferred." *Claire-Ann Co v Christenson & Christenson, Inc*, 223 Mich App 25, 30-31; 566 NW2d 4 (1997). Accordingly, given the extensive enforcement mechanisms already provided in the Revised School Code, we decline to infer a private right of action in MCL 380.1249 and conclude that the trial court properly determined that MCL 380.1249 does not establish a private cause of action under which plaintiff may bring the instant case.

### B. THE FAILURE TO FOLLOW THE PROCEDURES ESTABLISHED IN MCL 380.1249 MAY STATE A CLAIM UNDER MCL 380.1248

The gravamen of plaintiff's complaint was characterized by defendant and the trial court as the modern analogue of the previously recognized "subterfuge" claim. In *Baumgartner*, this Court appeared to find the continuing viability of such a claim dubious at best:

> [O]ne appellate decision, [*Freiberg*], asserted that the [TTC] had jurisdiction over a small number of layoff-related claims. It did so under the judicially created "subterfuge" doctrine, which allowed the [TTC] to hear claims that asserted the stated reason for layoff—for instance, economic hardship—was a mere pretext to terminate the teacher in bad faith. Yet, dispositively, *Freiberg* is no longer binding and has been rendered null and void by the 2011 Amendments in issue. [*Baumgartner*, ___ Mich App at ___; slip op at 9-10 (citation and footnotes omitted).]

However, as explained below, we conclude that in a case asserting that a teacher was laid off in violation of MCL 380.1248, the extent to which the evaluation procedure used by the district was in compliance with MCL 380.1249 may be relevant in asserting, or defending against, a section 1248 claim.

MCL 380.1248(3) states in pertinent part that "[i]f a teacher brings an action against a school district or intermediate school district based on this section, the teacher's sole and exclusive remedy shall be an order of reinstatement commencing 30 days after a decision by a court of competent jurisdiction." Section 1248 expressly incorporates the performance evaluation system delineated in § 1249:

> The policy shall ensure that a teacher who has been rated as ineffective under the performance evaluation system under section 1249 is not given any preference that would result in that teacher being retained over a teacher who is evaluated as minimally effective, effective, or highly effective under the performance evaluation system under section 1249. Effectiveness shall be measured by the performance evaluation system under section 1249, and the personnel decisions shall be made based on the following factors . . . . [MCL 380.1248(1)(b) (footnote omitted).]

Therefore, we must interpret both MCL 380.1248 and MCL 380.1249 to determine whether plaintiff stated a cause of action under MCL 380.1248 that may survive summary disposition pursuant to MCR 2.116(C)(8).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature, *Mich Ed Ass'n v Secretary of State* (*On Rehearing*), 489 Mich 194, 217; 801 NW2d 35 (2011), as inferred from the specific language of the statute, *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 13; 795 NW2d 101 (2009). Statutory language should be construed reasonably, keeping in mind the purpose of the act. *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012). Once the intention of the Legislature is discovered, it must prevail regardless of any conflicting rule of statutory construction. *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 372; 781 NW2d 310 (2009). This Court must consider the object of the statute and the harm it is designed to

remedy, and apply a reasonable construction that best accomplishes the statute's purpose. *C D Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 408; 834 NW2d 878 (2013).

The purpose of MCL 380.1248 is, at least in part, to regulate the policies and criteria "regarding personnel decisions . . . resulting in the elimination of a position." MCL 380.1248(1). In furtherance thereof, § 1248 requires the "school district [to] adopt[] . . . a policy that provides that all personnel decisions when conducting a staffing or program reduction . . . *are based on retaining effective teachers.*" MCL 380.1248(1)(b) (emphasis added). The determination of whether a teacher is effective is to be made pursuant to the evaluation system delineated in § 1249, see MCL 380.1248(1)(b) ("Effectiveness shall be measured by the performance evaluation system under section 1249 . . . ."); *Baumgartner*, ___ Mich App at ___ ; slip op at 12 ("Section 1248 then mandates that all "policies regarding personnel decisions when conducting a staffing or program reduction"—i.e., *layoffs*—must be conducted on: (1) the basis of the "performance evaluation system" the school district developed in compliance with § 1249; and (2) other specific factors listed in § 1248."), and the individual performance of a teacher must be the majority factor in making personnel decisions, MCL 380.1248(1)(b)(*i*). Any violation of § 1248 provides a private cause of action for the aggrieved teacher. MCL 380.1248(3); *Baumgartner*, ___ Mich App at ___; slip op at 12.

Therefore, based on the specific language of § 1248, *United States Fidelity Ins*, 484 Mich at 13, the requirement that the school district must utilize a "performance evaluation system" in compliance with § 1249 as it evaluates teachers and makes layoff decisions is one of the requirements with regard to which a teacher may assert a private cause of action under § 1248(3). Accordingly, if a school district lays off a teacher because she is deemed ineffective, but the school district measured the teacher's effectiveness using a performance evaluation system that did not comply with § 1249 (e.g., if a school district failed to use a "rigorous, transparent, and fair performance evaluation system," MCL 380.1249(1)), or made a personnel decision that was not based on the factors delineated in MCL 380.1248(1)(b)(*i*)-(*iii*), the teacher could assert a cause of action under § 1248(3) based on a violation of § 1248(1)(b). Such a claim is not identical to the "subterfuge" claim that existed under *Freiberg*, but it is analogous in that plaintiff may have a cause of action, even though the school evaluated plaintiff as "minimally effective" and laid her off due to her status as the lowest rated teacher, if her evaluation was based on an evaluation system other than that delineated in § 1249 or was based on an evaluation system that was not fair and transparent. MCL 380.1248(3). Therefore, to the extent that plaintiff's complaint alleged that she was laid off based upon considerations other than those permitted under MCL 380.1248, or was laid off following an evaluation that did not comply with MCL 380.1249, plaintiff may have stated a cause of action under MCL 380.1248 that was sufficient to survive summary disposition under MCR 2.116(C)(8).[8]

Our construction of § 1248 should not be interpreted to broadly allow teachers to assert private causes of action that are not specifically based on violations of the particular

---

[8] We do not expressly find, however, that plaintiff did, in fact, state a claim under MCL 380.1248.

requirements for personnel decisions under § 1248. As stated above, under § 1248(3), a teacher may only bring a cause of action that is "based on *this section*." (Emphasis added.) Thus, a private right of action under § 1248 is limited to claims that a personnel decision was made based on considerations that are not permitted under the statute, i.e., the teacher was laid off based on length of service or tenure status in violation of § 1248(1)(c), or was laid off using a procedure or based on factors *other than* those listed in § 1248(1)(b). As such, a plaintiff may not raise a claim under § 1248 based on a violation of an evaluation system under § 1249 *unless* he or she is specifically alleging that a school district's failure to comply with § 1249 resulted in a performance evaluation that was *not* actually based on his or her effectiveness and, most importantly, *that a personnel decision was made based on that noncompliant performance evaluation*. Stated differently, a cause of action under § 1248 should not be interpreted to include claims related to a school district's compliance with § 1249 in cases where the plaintiff is not challenging a personnel determination, as defined under § 1248(1).

Moreover, we recognize that a cause of action under § 1248 based on a layoff that occurred following an evaluation that did not comply with § 1249 may appear to encompass subjective considerations or invite frivolous or illusory claims. However, it is evident that in adopting § 1249, the Legislature intended that there be significant emphasis on the utilization of objective criteria in the evaluation of a teacher (i.e., student growth and assessment data, § 1249(1)(c), (2)(a), the results of classroom observations, § 1249(2)(c), and the results of a state or local evaluation tool, § 1249(2)(d)). Moreover, a layoff decision, as made under the criteria articulated in § 1248(1)(b), must be based on (1) the teacher's effectiveness as evaluated under § 1249, (2) the teacher's individual performance, which is also based on objective criteria, including evidence of student growth, a teacher's demonstrated pedagogical skills, a teacher's classroom management, a teacher's attendance record, and a teacher's disciplinary record, (3) the teacher's significant, relevant accomplishments and contributions, and (4) the teacher's relevant special training. The Legislature confirms its emphasis by its unambiguous language that "[e]ffectiveness *shall be measured* by the performance evaluation system under section 1249." MCL 380.1248(1)(b). Accordingly, we find that the Legislature specifically intended to allow teachers to challenge layoff decisions that were based on performance evaluations that did not comply with the requirements under § 1249. Therefore, given the specific references to § 1249 in the requirements with which a school district must comply under § 1248, we conclude that our construction of § 1248, as it relates to § 1249, is consistent with the Legislature's intent, *Mich Ed Ass'n*, 489 Mich at 217, and best accomplishes the objects of the statute, *C D Barnes Assoc*, 300 Mich App at 408.

Finally, we hold that the trial court's findings regarding whether plaintiff stated a claim under MCL 380.1248 sounded in jurisdictional language. We acknowledge the trial court's finding that plaintiff's "allegations do not support a claim under MCL 380.1248, which requires the lay-off to be based on 'teacher effectiveness.' " However, it appears that this finding is rooted in the trial court's construction of plaintiff's complaint[9] as alleging a claim of subterfuge, which had traditionally been within the exclusive jurisdiction of the TTC. Stated another way,

---

[9] Plaintiff's complaint does not contain the word subterfuge.

the trial court's ruling with regard to MCL 380.1248 appears to rest on its conclusion that plaintiff's complaint failed to allege that she was laid off due to an improperly given, "minimally effective" rating. As such, the trial court's ruling directly addresses only whether summary disposition under MCR 2.116(C)(4) was appropriate. Because the trial court did not specifically articulate the grounds which would support the finding that plaintiff's complaint failed to state a viable claim such that defendants' motion for summary disposition under MCR 2.116(C)(8) should be granted, we vacate this aspect of the trial court's order granting summary disposition in favor of defendants and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs under MCR 7.219, a question of public policy being involved.

/s/ Kurtis T. Wilder
/s/ Donald S. Owens
/s/ Michael J. Kelly