*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WEST LANSING RETAIL DEVELOPMENT, LLC,

        Plaintiff/Counterdefendant-Appellee,

v

HIS ACRES, LLC,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellant,

and

K2 RETAIL CONSTRUCTION SERVICES, INC.,

        Third-Party Defendant-Appellee

UNPUBLISHED
February 16, 2023

No. 358912
Eaton Circuit Court
LC No. 20-001136-CZ

Before: GLEICHER, C.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant-counterplaintiff, HIS Acres, LLC ("HIS Acres"), appeals as of right the final order dismissing this case. On appeal, HIS Acres challenges the trial court's grant of summary disposition under MCR 2.116(C)(4) and (10) in favor of plaintiff-counterdefendant, West Lansing Retail Development, LLC ("WLRD"), and third-party defendant, K2 Retail Construction Services, Inc. ("K2")[1] (collectively, "the developers"). We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises in the context of the construction of the Delta Crossings retail development, which sits along Highway M-43 in Delta Township, Michigan. WLRD had purchased two

---

[1] Although WLRD and K2 are separate parties to this litigation, their attorneys worked in concert and interchangeably throughout the lower court proceedings. On appeal, K2 filed a brief fully adopting WLRD's arguments on appeal.

adjoining parcels of land, the "Unified" parcel and the "Flowerland" parcel, with the intent of developing Delta Crossings into a number of "big box" stores. WLRD hired K2 as the general contractor for the project. HIS Acres owned another adjoining parcel, the "Paradise" parcel. The Paradise parcel houses a used car dealership, Paradise Motors.

Originally part of a larger parcel (that also then included both the Unified parcel and the Flowerland parcel), the Paradise parcel was created by a 1963 land transaction. That transaction reserved the easternmost 40 feet of the Paradise parcel for "common driveway easement purposes" (the "1963 easement agreement"). The Flowerland parcel was later created; it lies to the east of the Paradise parcel. The Paradise easement thus allows access to both parcels. The width of the easement was later widened through a 1986 agreement ("the "1986 easement agreement"). The 1986 easement agreement included a clause stating that no changes would be made to the Paradise easement "unless mandated by a governmental entity."

A dispute arose after HIS Acres learned that, as part of the construction process, WLRD intended to modify the Paradise easement. At the time, the entrance to the Paradise easement off M-43 was "full access," meaning vehicles could enter and exit the easement, turning both left and right. The developers intended to change the entrance to the easement to a right-in/right-out ("RIRO") configuration, which would change the manner of ingress and egress.

WLRD filed a complaint in the trial court, asking the court for declaratory relief specifying the rights of the parties relative to the Paradise easement. A counterclaim, HIS Acres's third-party complaint adding K2 to the litigation, and multiple motions for summary disposition by all the parties, followed. In July 2021, the trial court granted in part and denied in part the motions for summary disposition. It then allowed the parties to reopen discovery for a short period to resolve some remaining questions. It later entered a final order of judgment, and dismissed the case. On appeal, HIS Acres presents three issues: (1) whether a 1969 warranty deed conveying the Flowerland parcel terminated easement rights to the lands north of the Flowerland parcel; (2) whether K2 had the authority to apply to the Michigan Department of Transportation ("MDOT") for a conditional permit to modify the Paradise easement; and (3) whether the MDOT "mandated" a RIRO configuration at the entrance to the Paradise easement.

## II. STANDARDS OF REVIEW

Motions for summary disposition are reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Similarly, whether a trial court has subject-matter jurisdiction is reviewed de novo. *Winkler by Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017).

"Summary disposition under MCR 2.116(C)(4) is proper when a 'court lacks jurisdiction of the subject matter.' " *Wells Fargo Rail Corp v State of Mich Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 3, quoting MCR 2.116(C)(4). "For jurisdictional questions under MCR 2.116(C)(4), this Court determines whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate a lack of subject matter jurisdiction." *Summer v Southfield Bd of Ed*, 310 Mich App 660, 668; 874 NW2d 150 (2015) (quotation marks, citations, and alterations omitted). "Summary disposition for lack of jurisdiction under MCR 2.116(C)(4) is proper when a plaintiff has failed to

exhaust its administrative remedies." *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 50; 620 NW2d 546 (2000). A plaintiff bears the burden of establishing jurisdiction. *Id*. Generally speaking, "[t]he circuit courts of this state have subject-matter jurisdiction to issue declaratory rulings, injunctions, or writs of mandamus," unless "the Legislature has expressed an intent to make an administrative tribunal's jurisdiction exclusive[.]" *Id*.

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. Summary disposition is proper under this subsection if "the proffered evidence fails to establish a genuine issue regarding any material fact[.]" *Id*. This Court's review of a motion under MCR 2.116(C)(10) "considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion." *Id*. Under the burden-shifting framework of this court rule:

> [T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted)].

This Court reviews de novo issues involving the proper interpretation of statute and administrative rules. *City of Romulus v Michigan Dep't of Environmental Quality*, 260 Mich App 54, 64; 678 NW2d 444 (2003).

> Principles of statutory interpretation apply to the construction of administrative rules. Thus, we must ascertain and give effect to the intent of the drafter of the statute or administrative rule under review. We start by reviewing the language of the administrative rule or statute. If the language is unambiguous on its face, the drafter is presumed to have intended the meaning plainly expressed and further judicial interpretation is not permitted. [*Id*. at 65 (citations omitted).]

"Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). In *Little v Kin*, 468 Mich 699; 664 NW2d 749 (2003), our Supreme Court discussed how courts should interpret the scope of an easement.

> First, the trial court must determine whether the easement contemplates the construction and maintenance of a dock by defendants. In answering this question, the trial court shall begin by examining the text of the easement. Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted. If the text of the easement is ambiguous,

extrinsic evidence may be considered by the trial court in order to determine the scope of the easement.  [*Id*. at 700 (citation omitted).]

## III.  TERMINATION

HIS Acres argues that the 1969 conveyance of the Flowerland parcel effectively terminated easement rights of the parcels north of Flowerland.  According to HIS Acres, the trial court did not "provide meaningful reasoning" explaining why the 1963 easement agreement was not terminated as to the northward lands when Flowerland was conveyed in 1969.  Although we agree the trial court failed to provide "meaningful reasoning" regarding the rights of the northward parcels,[2] we disagree that this failure requires this Court's reversal.

The issue is whether the 1969 conveyance creating the Flowerland parcel caused the northward parcels to lose rights relative to the Paradise easement.  HIS Acres argues that by omitting any reservation of the Paradise easement, the grantors of the 1969 warranty deed deprived themselves of access to the easement and, therefore, the grantors expressed an intent to abandon their rights to the easement.  "Abandonment is largely a matter of intention.  It consists of intention and nonuser."  *Goodman v Brenner*, 219 Mich 55, 60; 188 NW 377 (1922).  To demonstrate abandonment, "[t]here must be coupled with the nonuser some clear and decisive act of the dominant owner, showing an intention to abandon and release his right."  *Id*.

Again, HIS Acres moved for summary disposition under MCR 2.116(C)(10)—that means HIS Acres needed to present "affidavits, depositions, admissions, or other documentary evidence" in support of its arguments.  *Quinto*, 451 Mich at 362-363.  With respect to this issue, HIS Acres needed to produce evidence showing "intention *and* nonuser" by the grantors of the 1969 warranty deed.  See *Goodman*, 219 Mich at 60 (emphasis added).  Relative to this argument, HIS Acres's motion for summary disposition attached three items of documentary evidence purporting to show the grantors' intent to abandon the Paradise easement—(1) the 1969 warranty deed conveying the Flowerland parcel; (2) a September 15, 1986 agreement creating an easement northbound through a third-party parcel to the southern boundary of the Unified parcel; and (3) an August 15, 1986 land contract over the Flowerland parcel.

We disregard the September 15, 1986 easement agreement over the third-party parcel and the August 15, 1986 land contract as evidence of abandonment.  The issue here is whether the *1969* grantors intended to abandon their rights over the Paradise easement.  Unless they specifically referenced the 1969 conveyance—which they did not—evidence of land transactions that took place nearly 20 years later are not evidence of the grantors' intent in 1969 to abandon the Paradise easement.

---

[2] This Court, in its discretion, may consider issues not decided by the trial court when the issue involves a question of law for which all the essential facts are presented.  *Autodie, LLC v Grand Rapids*, 305 Mich App 423, 431; 852 NW2d 650 (2014).

This leaves as evidence the 1969 warranty deed. As noted above, the 1969 warranty deed omitted any reservation by the grantors to the Paradise easement. Even so, this omission is not evidence of "intention and nonuser." Intention implies some affirmative act by the grantor to abandon the Paradise easement. See *Black's Law Dictionary* (11th ed) ("The willingness to bring about something planned or foreseen; the quality, state, or condition of being set to do something."). Although the grantors of the 1969 warranty deed omitted a specific reservation over the Paradise easement,[3] that does not give rise to any affirmative act by the grantors. Similarly, the omission is not indicative of any nonuse by the grantors. In short, HIS Acres's proffered evidence fails to show either intent or nonuse.

Because HIS Acres's motion for summary disposition was brought under MCR 2.116(10), it was required to meet a certain evidentiary burden establishing a genuine question of fact. HIS Acres's evidence did not show either intention or nonuse. Therefore, HIS Acres did not meet its burden as the moving party. Had the trial court fully considered this issue, it should have denied summary disposition on this basis.

## IV. JURISDICTION

HIS Acres argues the trial court erred in granting summary disposition[4] because the developers' conditional permit application to the MDOT, which was completed by K2, was invalid. We disagree.

Again, K2 applied to the MDOT for a conditional permit to commence construction activities over the Paradise easement. K2 stated its purpose was for "[u]pgrades to existing Marketplace Drive and replace existing commercial drive approach with commercial private road." The MDOT issued the conditional permit with the following certification from K2, that: "I am the legal owner of this property or facility, the owner's authorized representative, or have statutory authority to work within the state highway Right-of-Way."

HIS Acres's counterclaim challenged this certification, stating: "K2 did not request permission from HIS Acres, nor was any permission granted, for K2 to submit the application to MDOT to alter the design of the Driveway Easement . . . . K2 is not the owner of the Paradise Parcel nor a legal representative of HIS Acres and, therefore, is not permitted to lawfully commence any construction work under the Conditional Permit." Accordingly, HIS Acres asked the trial court to enter a declaratory judgment "declaring [the developers] are (i) not permitted to commence any construction activities on the [Paradise] Easement, under the Conditional Permit

---

[3] The 1969 warranty deed did, however, state the conveyance was "subject to easement and right of way of record . . . ."

[4] HIS Acres's brief on appeal incorrectly states that the standard of review of this issue is for an MCR 2.116(C)(10) motion for summary disposition. The developers' motion for summary disposition argued that the trial court lacked jurisdiction to consider the MDOT's grant of the conditional permit because HIS Acres failed to first avail itself of the MDOT's administrative processes. As such, the developers moved for summary disposition under MCR 2.116(C)(4), which contemplates lack of jurisdiction as a basis for dismissal.

-5-

or otherwise, without first obtaining the written permission to do so from HIS Acres . . . ." The developers' motion for summary disposition collaterally attacked HIS Acres's counterclaim, stating, "[a] party wishing to challenge an application for an MDOT permit must do so before MDOT."

The driveways, banners, and parades act, MCL 247.321 *et seq.*, "prescribe[s] requirements for the issuance of permits." To further this goal, the MDOT is empowered to "make rules necessary for the administration of this act." MCL 247.325. Included in its rules, the MDOT directs that "[a]n application for a driveway permit shall be accepted from a property owner, governmental agency, lessee, or its legally authorized agent." Mich Admin Code, R 247.221(1). The application "shall contain or be accompanied by a certification of either legal ownership or agency authorization." Mich Admin Code, R 247.221(2). If a person disagrees with MDOT's actions under these rules, the person may request an administrative hearing with the MDOT. Mich Admin Code, R 247.357.

> When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review by the courts as provided by law. [MCL 24.301.]

HIS Acres's complaint specifically challenged the MDOT's issuance of the conditional permit because K2 was not "a property owner, governmental agency, lessee, or its legally authorized agent." However, HIS Acres never asked for an administrative hearing as to this issue. Therefore, HIS Acres failed to exhaust its administrative remedies and it was proper for the trial court to grant summary disposition on this basis. MCL 24.301.

## V. RIRO

HIS Acres argues the MDOT did not "mandate" that the developers construct a RIRO configuration at the entrance to the Paradise easement. Therefore, the developers exceeded the scope of the 1986 easement agreement and the trial court erred in denying summary disposition as to this issue. HIS Acres abandoned this issue on appeal and we decline to consider it now.

The developers argue HIS Acres waived this issue for this Court's review. In support of their argument, they point to a statement made by HIS Acres's counsel during the September 10, 2021 status conference: "Our . . . position on the matter now is that MDOT is mandating that this obstruction be placed on my client's property . . . . The point is that MDOT is mandating that this obstruction be placed there." The trial court agreed with this assertion, stating "MDOT is mandating that [the developers] install the right-in, right-out concrete feature . . . ."

The doctrine of judicial estoppel provides that, "a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding." *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 737; 761 NW2d 454 (2008) (quotation marks and alterations omitted). HIS Acres's earlier "position" that the MDOT was mandating the RIRO was accepted by the trial court and is wholly inconsistent with its present position that there was "clear and unequivocal testimony that MDOT

was not mandating the RIRO . . . ." As such, HIS Acres is judicially estopped from making this argument on appeal and we consider the issue abandoned for our review.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron