# STATE OF MICHIGAN

# COURT OF APPEALS

MEREDITH SUMMER,

        Plaintiff-Appellant,

v

SOUTHFIELD BOARD OF EDUCATION and
SOUTHFIELD PUBLIC SCHOOLS,

        Defendants-Appellees.

FOR PUBLICATION
May 1, 2018
9:00 a.m.

No. 336665
Oakland Circuit Court
LC No. 2013-135991-CL

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

TUKEL, J.

In this suit involving an employment dispute under the Revised School Code, MCL 380.1 *et seq*., plaintiff, Meredith Summer, appeals as of right the trial court's January 9, 2017 opinion and order granting summary disposition in favor of defendants, the Southfield Board of Education and Southfield Public Schools, pursuant to MCR 2.116(C)(8) and (C)(10). We reverse and remand for further proceedings.

## I. BASIC FACTS

This matter returns to this Court after a prior panel affirmed in part, reversed in part, and vacated in part an earlier decision of the trial court, which had granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(4) and (C)(8). *Summer v Southfield Bd of Ed*, 310 Mich App 660; 874 NW2d 150 (2015) (*Summer I*). In that June 2, 2015 opinion, this Court explained the general factual background that gave rise to this litigation:

> This action arises out of a teacher layoff dispute. According to plaintiff's complaint, she began working as a teacher in the Southfield Public Schools in 1999. During the 2010-2011 school year, plaintiff was involved in an ongoing dispute with a colleague. The dispute ultimately led plaintiff to file an internal complaint in the spring of 2011, in which she claimed that the other employee had been harassing her. According to plaintiff, defendants failed to provide any information regarding the results of the investigation that followed plaintiff's complaint.

-1-

At the beginning of the 2011-2012 school year, an administrator for defendants allegedly informed an employee that she "would not have to worry about [plaintiff]" after the 2011-2012 school year. According to plaintiff, defendants subsequently observed her performance in the classroom, but never shared with her the results of the observation. At the end of the school year, defendants concluded that plaintiff's teaching performance that year was "minimally effective," but despite this evaluation rating, they did not provide a "plan of improvement" for plaintiff or otherwise give plaintiff an opportunity to improve the purported deficiencies in her performance. At the end of the 2011-2012 school year, plaintiff was laid off by defendants. According to plaintiff, she was the only teacher in the school to receive a "minimally effective" rating. Despite being laid off at the end of the 2011-2012 school year, plaintiff was subsequently hired to teach summer school during the summer of 2012.

On August 30, 2013, plaintiff filed a complaint alleging that she was laid off in violation of the Revised School Code, MCL 380.1 *et seq.* Plaintiff asserted that while defendants had purportedly "developed a system to effectuate standards for placements, layoffs, and recalls," which—under the requirements of MCL 380.1249—"was supposed to be based on teacher effectiveness and be rigorous, transparent and fair," nevertheless, defendants' actions in laying off plaintiff "were arbitrary, capricious, and in bad faith" in the following ways:

> A. Defendants . . . retaliated against [plaintiff] by failing or refusing to share the results of her retaliation complaint [against another employee who had harassed plaintiff] despite the fact that she was the Complainant;
>
> B. Defendants . . . prejudged her evaluation when it [sic] decided, and declared that at the end of the 2011-2012 school year, people "would not have to worry about [plaintiff];"
>
> C. Defendants . . . gave [plaintiff] a "Minimally Effective" evaluation based in part on Observations that were never even shared with [plaintiff] and for which no written feedback was given;
>
> D. Defendants . . . also harbored ill will towards [plaintiff] based on incidents when she served as the union building representative[.]

Plaintiff also alleged that defendants provided no plan of improvement and "no opportunity to cure any alleged performance shortcomings" after it rated plaintiff as minimally effective. Plaintiff's complaint requested a judgment (1) requiring defendants to recall her to her previous position, (2) requiring defendants to void and destroy her 2011-2012 school year evaluation, and (3) awarding money damages equaling her costs and attorney fees, and any other relief to which she was entitled. [*Id.* at 662-664.]

Defendants moved for summary disposition pursuant to MCR 2.116(C)(4) (lack of subject-matter jurisdiction) and MCR 2.116(C)(8) (failure to state a claim). *Id*. at 664. The trial court granted the motion. *Id*. at 667. However, while the trial court referenced it was granting the motion under both MCR 2.116(C)(4) and MCR 2.116(C)(8), this Court determined that the trial court's explanation for its ruling really was only based on MCR 2.116(C)(4). *Id.* at 682.

Relevant to the present appeal, this Court examined MCL 380.1248 and explained:

> The purpose of MCL 380.1248 is, at least in part, to regulate the policies and criteria governing "personnel decisions . . . resulting in the elimination of a position . . . ." MCL 380.1248(1). In furtherance thereof, § 1248 requires the "school district [to] adopt [] . . . a policy that provides that all personnel decisions when conducting a staffing or program reduction . . . *are based on retaining effective teachers*." MCL 380.1248(1)(b) (emphasis added). The determination of whether a teacher is effective is to be made pursuant to the evaluation system delineated in § 1249. See MCL 380.1248(1)(b) ("Effectiveness shall be measured by the performance evaluation system under section 1249 . . . ."). And the individual performance of a teacher must be the majority factor in making personnel decisions, MCL 380.1248(1)(b)(*i*). Any violation of § 1248 provides a private cause of action for the aggrieved teacher. MCL 380.1248(3). [*Summer I*, 310 Mich App at 678-679 (citations to cases omitted).]

This Court reversed the grant of summary disposition under MCR 2.116(C)(4) because, contrary to the trial court's ruling, the circuit court did have jurisdiction to hear plaintiff's claims. *Id.* at 673-674, citing *Baumgartner v Perry Pub Sch*, 309 Mich App 507, 531; 872 NW2d 837 (2015). Further, the *Summer I* Court held that while § 1249 of the Revised School Code did not provide a private right of action, § 1248 did. *Id.* at 676, 679. As a result, "the trial court properly determined that MCL 380.1249 does not establish a private cause of action under which plaintiff may bring the instant case." *Id.* at 676. The Court therefore determined that

> a private right of action under § 1248 is limited to claims that a personnel decision was made based on considerations that are not permitted under the statute, i.e., the teacher was laid off based on length of service or tenure status in violation of § 1248(1)(c), or was laid off using a procedure or based on factors other than those listed in § 1248(1)(b). Accordingly, a plaintiff may not raise a claim under § 1248 based on a violation of an evaluation system under § 1249 *unless* he or she is specifically alleging that a school district's failure to comply with § 1249 resulted in a performance evaluation that was *not* actually based on his or her effectiveness and, most importantly, *that a personnel decision was made based on that noncompliant performance evaluation*. [*Id.* at 680 (emphasis in original).]

"Therefore, to the extent that plaintiff's complaint alleged that she was laid off on the basis of considerations other than those permitted under MCL 380.1248, or was laid off following an evaluation that did not comply with MCL 380.1249, plaintiff *may* have stated a cause of action under MCL 380.1248 that was sufficient to survive summary disposition under MCR 2.116(C)(8)." *Id*. at 679-680 (emphasis added). Notably, the Court did not reach a decision regarding whether plaintiff's complaint actually stated such a claim. *Id*. at 680 n 10.

Rather, the Court explained that the trial court failed to specifically articulate whether plaintiff's complaint stated such a claim and remanded for consideration of this question. *Id.* at 682.

This Court's opinion in *Summer I* was handed down on June 2, 2015. And effective November 5, 2015, the Legislature enacted 2015 PA 173, which amended MCL 380.1249. 2015 PA 173, *inter alia*, added a provision that explained that § 1249 "does not affect the operation or applicability of section 1248." MCL 380.1249(7), as amended in 2015 PA 173.

Plaintiff filed an amended complaint on March 11, 2016. The amended complaint provided a little more detail regarding plaintiff's dispute with her coworker. Plaintiff explained that she had had a personal dispute with Tina Lees, a colleague. Lees was a personal friend of Paula Lightsey, the principal of Thompson K-8 Academy, the school where plaintiff taught. Plaintiff allegedly had sought Lightsey's assistance with regard to her conflict with Lees but "to no avail." Plaintiff also alleged that she had filed an internal complaint that was investigated in the "Spring of 2011." Plaintiff alleged that after having filed her internal complaint, she had contacted defendants' human resources department to inquire regarding the status of the investigation. She was eventually told that Lightsey had been reprimanded. Plaintiff requested a written report regarding the investigation, and received a letter on October 3, 2011. This letter, which was authored by David Turner, defendants' Associate Superintendent for Human Resources and Labor Relations, explained that while Turner was unable to substantiate plaintiff's allegations of a hostile work environment, Turner could "attest to the dereliction and neglect of duty on the part of the Thompson K-8 administrative team."

Plaintiff's amended complaint also alleged that Lightsey observed her classroom on February 7, 2012, but did not share the results of this observation with plaintiff or give any indication of any concerns she may have had about plaintiff's performance in the classroom. Lightsey, however, told another teacher, Lori List, that List would not have to worry about plaintiff after the 2011-2012 school year. In March 2012, Lightsey rated plaintiff as "minimally effective" but allegedly did not provide her with a plan of improvement or an opportunity to cure any purported shortcomings. Plaintiff was the only teacher rated minimally effective in her building. She was laid off effective June 30, 2012, but was hired by defendants to teach summer school in 2012.

The final two paragraphs of the amended complaint state:

28. Defendants' layoff of Plaintiff was in violation of Section 1248 and Section 1249 of the Revised School Code because they refused to provide Plaintiff with the February 7th observation results and failed to provide Plaintiff with a Plan of Improvement and an opportunity to improve. MCL 380.1248, 380.1249.

29. Defendants' evaluation system was not rigorous, transparent, and fair when used to evaluate Plaintiff.

On October 19, 2016, defendants again moved for summary disposition, pursuant to MCR 2.116(C)(8). Defendants primarily argued that through the enactment of 2015 PA 173, and specifically the amended MCL 380.1249(7), our Legislature rejected the holding in *Summer I*, thereby rendering plaintiff's claims based on purported violations of MCL 380.1249

-4-

inactionable. Defendants also argued that if *Summer I* was still controlling notwithstanding the legislative amendment, plaintiff's amended complaint still failed to state a claim under *Summer I* and that, in any event, the factual record proved that defendant had complied with the applicable statutory provisions by providing plaintiff with constructive feedback and opportunities to improve.

The trial court agreed that in enacting 2015 PA 175, our Legislature had rejected the holding of *Summer I*. The trial court concluded that as a result of the legislative amendment, plaintiff's complaint no longer alleged a valid cause of action. The trial court also agreed with defendants' alternative arguments, explaining in a written opinion:

> Assuming arguendo that the [*Summer I*] decision is still binding precedent, Plaintiff's Complaint fails to state a valid claim because she has not pled violations of [§] 1249(1)(a) through (d). In addition, Plaintiff's claim of bias would necessarily encompass subjective considerations regarding her evaluator's state of mind and would not be specifically based on violations of the particular statutory requirements. Under the statute, Plaintiff was not entitled to an IDP in 2011-2012, or an opportunity to cure before a layoff. The Court finds that Defendants have complied with the requirements of [§] 1249 by properly evaluating and sharing the evaluation with timely and constructive feedback with Plaintiff. Therefore, summary disposition is appropriate under MCR 2.116(C)(8) and (10).

Plaintiff now appeals the trial court's ruling.

## II. DISCUSSION

### A. 2015 PA 173 AND *SUMMER I*

Plaintiff first argues that the trial court erred when it held that 2015 PA 173 rejected this Court's holding in *Summer I* and rendered her complaint inactionable. We agree.

The proper interpretation of a statute is a question of law that we review de novo on appeal. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 102; 754 NW2d 259 (2008).

> The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature, as inferred from the specific language of the statute. Statutory language should be construed reasonably, keeping in mind the purpose of the act. Once the intention of the Legislature is discovered, it must prevail regardless of any conflicting rule of statutory construction. This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. [*Summer I*, 310 Mich App at 677-678 (citations omitted).]

Here, the trial court ruled that 2015 PA 173, through its amendment of MCL 380.1249, clarified that §§ 1248 and 1249 "are distinct and unconnected and not in pari materia," contrary

to this Court's holding in *Summer I*. We hold that such an interpretation is not supported by the plain language of the statute.

The trial court, in making its ruling, relied on MCL 380.1249(7), which was amended by 2015 PA 173 and states, "This section does not affect the operation or applicability of section 1248." Defendants contend that the trial court correctly determined that the *Summer I* Court interpreted MCL 380.1248 and MCL 380.1249 *in pari materia*. As a result, defendants claim that through the revision to MCL 380.1249(7), our Legislature demanded that this Court interpret the two provisions separately. Thus, defendants argue (and the trial court agreed) that a teacher may no longer raise claims based on violations of MCL 380.1249 by way of a suit alleging violations of MCL 380.1248(3). Defendants and the trial court are incorrect on all fronts.

The *in pari materia* rule of statutory construction holds that statutes relating to the same subject or sharing a common purpose should be read together as one, even if the two statutes contain no reference to each other and were enacted at different times. *O'Connell v Dir of Elections*, 316 Mich App 91, 99; 891 NW2d 240 (2016). Notably absent from this Court's opinion in *Summer I* is any use of the phrase "*in pari materia*." Rather, this Court's holding was based on the fact that § 1248 "expressly incorporates the performance evaluation system delineated in § 1249." *Summer I*, 310 Mich App at 677; see also MCL 380.1248(1)(b) (stating that a teacher's "[e]ffectiveness shall be measured by the performance evaluation system under section 1249"). Accordingly, this Court's ultimate holding was "*based on the specific language of § 1248*," *Summer I*, 310 Mich App at 679 (emphasis added), and this Court was not reading the statutes *in pari materia*. Rather, this Court read the plain language of MCL 380.1248 and applied it as written. Given this conclusion, the *in pari materia* rule of statutory construction is not implicated. "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). "Once the intention of the Legislature is discovered, this intent prevails regardless of any conflicting rule of statutory construction." *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 372; 781 NW2d 310 (2009).

Therefore, the amendatory language now found in MCL 380.1249(7) does not alter this Court's holding in *Summer I*. The provision relied on by the trial court and defendants states that MCL 380.1249 "does not affect the operation or applicability of section 1248." MCL 380.1249(7), as amended by 2015 PA 173. This language simply means what it states, no more and no less, that MCL 380.1249 simply has no effect on the operation or applicability of MCL 380.1248. It does not purport to preclude a cause of action of the type found viable in *Summer I*. And as plaintiff notes, had the Legislature intended to reject *Summer I*, it much more likely would have indicated its intent by amending MCL 380.1248, the language of which formed the basis for this Court's ruling, rather than to enact a statute which by its terms did not affect the operative existing statutory language.[1]

_____

[1] Moreover, assuming that the trial correctly ruled that MCL 380.1249(7)'s revision through 2015 PA 173 did act to overrule *Summer I* and ostensibly preclude plaintiff's suit, the legislation

B.  SUMMARY DISPOSITION PURSUANT TO MCR 2.116(C)(8)

Plaintiff next challenges the trial court's conclusion that if *Summer I* still controls, plaintiff's amended complaint fails to state a claim upon which relief may be granted.  We agree that plaintiff's complaint states a claim under *Summer I* and that the trial court erred by holding otherwise.

We review a trial court's decision on a motion for summary disposition de novo.  *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint.  All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant.  A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery."  When deciding a motion brought under this section, a court considers only the pleadings. [*Id.* at 119-120 (citations omitted).]

As already discussed, this Court's holding in *Summer I* is still germane and controlling. 2011 PA 102, which was in effect during the relevant times during the history of this case, provided in pertinent part the following:

> Sec. 1248.  (1) For teachers, as defined in section 1 of article I of 1937 (Ex Sess) PA 4, MCL 38.71, all of the following apply to policies regarding personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position, when conducting a recall from a staffing or program reduction or any other personnel determination resulting in the elimination of a position, or in hiring after a staffing or program reduction or any other personnel determination resulting in the elimination of a position by a school district or intermediate school district:
>
> (a) Subject to subdivision (c), the board of a school district or intermediate school district shall not adopt, implement, maintain, or comply with a policy that provides that length of service or tenure status is the primary or determining factor in personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position, when

---

nevertheless could not be applied to negate plaintiff's claims here because such an application of the legislation would run afoul of the prohibition against retroactive legislation abolishing existing causes of actions or vested rights.  See *In re Certified Questions*, 416 Mich 558, 573-575; 331 NW2d 456 (1982); *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Bd of Trustees v Pontiac (On Remand)*, 317 Mich App at 585.  Therefore, even if our interpretation of the effect of 2015 PA173 is incorrect, plaintiff's claims, which accrued and became vested before the enactment of 2015 PA 173, remain viable, subject to our MCR 2.116(C)(8) analysis below.

conducting a recall from a staffing or program reduction or any other personnel determination resulting in the elimination of a position, or in hiring after a staffing or program reduction or any other personnel determination resulting in the elimination of a position.

(b) Subject to subdivision (c), the board of a school district or intermediate school district shall ensure that the school district or intermediate school district adopts, implements, maintains, and complies with a policy that provides that all personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position, when conducting a recall from a staffing or program reduction or any other personnel determination resulting in the elimination of a position, or in hiring after a staffing or program reduction or any other personnel determination resulting in the elimination of a position, are based on retaining effective teachers. The policy shall ensure that a teacher who has been rated as ineffective under the performance evaluation system under section 1249 is not given any preference that would result in that teacher being retained over a teacher who is evaluated as minimally effective, effective, or highly effective under the performance evaluation system under section 1249. Effectiveness shall be measured by the performance evaluation system under section 1249, and the personnel decisions shall be made based on the following factors:

(*i*) Individual performance shall be the majority factor in making the decision, and shall consist of but is not limited to all of the following:

(A) Evidence of student growth, which shall be the predominant factor in assessing an employee's individual performance.

(B) The teacher's demonstrated pedagogical skills, including at least a special determination concerning the teacher's knowledge of his or her subject area and the ability to impart that knowledge through planning, delivering rigorous content, checking for and building higher-level understanding, differentiating, and managing a classroom; and consistent preparation to maximize instructional time.

(C) The teacher's management of the classroom, manner and efficacy of disciplining pupils, rapport with parents and other teachers, and ability to withstand the strain of teaching.

(D) The teacher's attendance and disciplinary record, if any.

(*ii*) Significant, relevant accomplishments and contributions. This factor shall be based on whether the individual contributes to the overall performance of the school by making clear, significant, relevant contributions above the normal expectations for an individual in his or her peer group and having demonstrated a record of exceptional performance.

(*iii*) Relevant special training. This factor shall be based on completion of relevant training other than the professional development or continuing education that is required by the employer or by state law, and integration of that training into instruction in a meaningful way.

(c) Except as otherwise provided in this subdivision, length of service or tenure status shall not be a factor in a personnel decision described in subdivision (a) or (b). However, if that personnel decision involves 2 or more employees and all other factors distinguishing those employees from each other are equal, then length of service or tenure status may be considered as a tiebreaker.

(2) If a collective bargaining agreement is in effect for employees of a school district or intermediate school district as of the effective date of this section and if that collective bargaining agreement prevents compliance with subsection (1), then subsection (1) does not apply to that school district or intermediate school district until after the expiration of that collective bargaining agreement.

(3) If a teacher brings an action against a school district or intermediate school district based on this section, the teacher's sole and exclusive remedy shall be an order of reinstatement commencing 30 days after a decision by a court of competent jurisdiction. The remedy in an action brought by a teacher based on this section shall not include lost wages, lost benefits, or any other economic damages.

Sec. 1249. (1) Not later than September 1, 2011, and subject to subsection (9), with the involvement of teachers and school administrators, the board of a school district or intermediate school district or board of directors of a public school academy shall adopt and implement for all teachers and school administrators a rigorous, transparent, and fair performance evaluation system that does all of the following:

(a) Evaluates the teacher's or school administrator's job performance at least annually while providing timely and constructive feedback.

(b) Establishes clear approaches to measuring student growth and provides teachers and school administrators with relevant data on student growth.

(c) Evaluates a teacher's or school administrator's job performance, using multiple rating categories that take into account data on student growth as a significant factor. For these purposes, student growth shall be measured by national, state, or local assessments and other objective criteria. If the performance evaluation system implemented by a school district, intermediate school district, or public school academy under this section does not already include the rating of teachers as highly effective, effective, minimally effective, and ineffective, then the school district, intermediate school district, or public school academy shall revise the performance evaluation system within 60 days after the effective date of the amendatory act that added this sentence to ensure

that it rates teachers as highly effective, effective, minimally effective, or ineffective.

(d) Uses the evaluations, at a minimum, to inform decisions regarding all of the following:

(*i*) The effectiveness of teachers and school administrators, ensuring that they are given ample opportunities for improvement.

(*ii*) Promotion, retention, and development of teachers and school administrators, including providing relevant coaching, instruction support, or professional development.

(*iii*) Whether to grant tenure or full certification, or both, to teachers and school administrators using rigorous standards and streamlined, transparent, and fair procedures.

(*iv*) Removing ineffective tenured and untenured teachers and school administrators after they have had ample opportunities to improve, and ensuring that these decisions are made using rigorous standards and streamlined, transparent, and fair procedures.[2]

As this Court explained, only MCL 380.1248(3) provides for a private cause of action under this statutory scheme, and such a claim is successfully pled if a plaintiff alleges that she was laid off because she "was deemed ineffective, but the school district measured [her] effectiveness using a performance evaluation system that did not comply with § 1249 (e.g., if a school district failed to use a 'rigorous, transparent, and fair performance evaluation system,' MCL 380.1249(1)), or made a personnel decision that was not based on the factors delineated in MCL 380.1248(1)(b)(*i*) through (*iii*)." *Summer I*, 310 Mich App at 679. Such a claim is not identical to a "subterfuge claim,"[3] but may be "analogous in that plaintiff may have a cause of action, even though the school evaluated plaintiff as minimally effective and laid her off due to her status as the lowest rated teacher, if her evaluation was based on a system other than that delineated in § 1249 or was based on an evaluation system that was not fair and transparent." *Id*.

---

[2] These portions of MCL 380.1248 and MCL 380.1249 contained in 2011 PA 102 are substantially similar to the current versions of the statutes.

[3] A subterfuge claim is a judicially recognized claim that existed before our Legislature's amendment of the Revised School Code in 2011. See *Summer I*, 310 Mich App at 668-673, 676-677. Such a claim contends that what would have been a valid reason for a layoff was, in reality, a pretext to terminate the teacher in bad faith. *Id*. at 676-677. In *Summer I*, this Court stated that the continued viability of such a claim is "dubious at best" in light of the amendments to the Revised School Code. *Id*. at 676, citing *Baumgartner*, 309 Mich App at 523.

Plaintiff's amended complaint clearly stated a claim under *Summer I*. Looking at the complaint broadly, plaintiff alleged that her layoff was the result of being given a rating of "minimally effective," which was the lowest rating any teacher received at her school. Viewing the amended complaint in a light most favorable to plaintiff, plaintiff alleged that she was given this rating because Lightsey held a personal bias or animus against her, which was not based on the merits of her performance. Thus, plaintiff alleged that her poor effectiveness rating, which caused her to be laid off, "was not based on the factors delineated in MCL 380.1248(1)(b)(*i*) through (*iii*)." *Id.* Plaintiff's amended complaint therefore stated a claim upon which relief could be granted.

Defendants contend that plaintiff's references to Lightsey's personal bias cannot state a claim because the claim would necessarily encompass Lightsey's subjective opinions of plaintiff, and would not be based on specific violations of MCL 380.1249. However, if plaintiff was laid off "based on considerations that are not permitted under the statute," such as being "laid off using a procedure or based on factors *other than* those listed in § 1248(1)(b)," then plaintiff has stated a valid claim. *Id.* at 680. Thus, although Lightsey's opinion of plaintiff certainly is subjective, if the opinion was based on an impermissible consideration, i.e., not a factor listed in § 1248(1)(b), then plaintiff can state a claim based on this failure of defendants to make a personnel decision based on permissible factors. Here, Lightsey having a bias against plaintiff because plaintiff filed a complaint against Lightsey's friend Lees, for the way Lees harassed plaintiff at work, qualifies as a "consideration[] . . . not permitted under the statute." *Id.* As the *Summer I* Court held, "the Legislature specifically intended to allow teachers to challenge layoff decisions that were based on performance evaluations *that did not comply with the requirements of § 1249*." *Id.* at 681 (emphasis added). Here, plaintiff alleged that her performance evaluation did not comply with § 1249 because it was instead based on a personal bias, which was not related to any of the factors listed in § 1249.

Additionally, plaintiff alleged other specific violations of MCL 380.1249.[4] Plaintiff alleged that she was not given the results of her February 7, 2012 observation, was not provided with an improvement plan, and was not given an opportunity to improve. Both currently and as enacted at the time plaintiff was discharged, MCL 380.1249 requires defendants to "adopt and implement . . . a rigorous, transparent, and fair performance evaluation system." MCL 380.1249(1).[5] This evaluation system was to meet certain minimum requirements. Defendants

---

[4] We reiterate that, as the *Summer I* Court held, a direct private cause of action does not exist for violations of § 1249, but a cause of action does exist through MCL 380.1248(3)(c), which can be predicated on a violation of § 1249 under the limited circumstances recognized in *Summer I*. *Summer I*, 310 Mich App at 679; see also MCL 380.1248(1)(b) (incorporating the requirements of § 1249); MCL 380.1249(3) (allowing for a cause of action "based on this section"). We recognize that some might state that our interpretation has little practical difference to a finding that a direct private right of action exists under § 1249. Whether or not that is true, our interpretation is based on fidelity to the language used by the Legislature.

[5] The statute has since been amended on several occasions to provide more specific requirements for teacher evaluations. See 2014 PA 257; 2015 PA 173; 2016 PA 170.

must evaluate teachers "at least annually" and "provid[e] timely and constructive feedback." MCL 380.1249(1)(a). Further, in using the evaluations to determine a teacher's effectiveness, defendants must ensure that teachers receive "ample opportunities for improvement." MCL 380.1249(1)(d)(*i*). And pursuant to MCL 380.1249(1)(d)(*iv*), defendants were required to use the evaluations required by MCL 380.1249 to "inform decisions regarding . . . [r]emoving ineffective . . . teachers . . . *after they have had ample opportunities to improve*." (Emphasis added).

Construing the allegations of the complaint in a light most favorable to plaintiff, she alleged sufficient facts to show violations of these sections. That plaintiff was evaluated through a classroom observation, but allegedly was not permitted to know the results of that observation, cannot be viewed as a transparent or fair evaluation system, much less one that provided plaintiff with "timely and constructive feedback." MCL 380.1249(1)(a). Plaintiff's allegations that she was never given prior warning of her purported shortcomings or an opportunity to cure those shortcomings, if true, would clearly seem to violate the requirement that defendants "ensur[e] that [teachers] are given ample opportunities for improvement." MCL 380.1249(1)(d)(*i*). Further, that plaintiff was removed without being given any opportunity to improve clearly violates MCL 380.1249(1)(d)(*iv*).

Defendants argue that there is no requirement that ineffective teachers receive an opportunity to improve before being laid off. We disagree. Again, MCL 380.1249(1)(d)(*i*) states that in rating the effectiveness of teachers, defendants must "ensur[e] that [teachers and school administrators] are given ample opportunities for improvement." In other words, giving teachers an opportunity to improve is, by statutory command, part and parcel of the evaluation of a teacher's effectiveness. Further, MCL 380.1249(1)(d)(*iv*) speaks of making the decision to remove a teacher after he or she has had "ample opportunities to improve." To hold that a school district need not provide a teacher with an opportunity to improve after giving a poor performance review would be to simply ignore these statutory provisions.

Defendants make the bald assertion that layoffs are not akin to "removing" a teacher. Thus, according to defendants, because MCL 380.1249(1)(d)(*iv*) speaks of "removing" a teacher, the statute has no relevance to this matter. In *Summer I*, this Court drew no distinction between layoffs and "removals"; rather, this Court plainly held that layoff decisions must comport with the requirements of MCL 380.1249. See, e.g., *Summer I*, 310 Mich App at 679 (explaining "the requirement that the school district must use a performance evaluation system in compliance with § 1249 as it evaluates teachers and makes *layoff decisions*" (emphasis added)). Indeed, pursuant to MCL 380.1248(1)(b), "*all* personnel decisions when conducting a staffing or program reduction or any other personnel determination resulting in the elimination of a position" must be based on the effectiveness of teachers, which is to be determined using the system delineated in MCL 380.1249. (Emphasis added.) This language clearly encompasses "layoffs" as layoffs are the result of a "staffing or program reduction." *Baumgartner*, 309 Mich App at 527.

Defendants argue that MCL 380.1249 did not require the use of classroom observations until the 2013-2014 school year and did not require feedback to be provided within 30 days until the 2016-2017 school year. Thus, according to defendants, it is not relevant that they failed to provide any feedback from the classroom evaluation to plaintiff, as the statute did not require this

to be done. Defendants are correct in stating that classroom observations were not required until the 2013-2014 school year. See MCL 380.1249(2)(c), as amended by 2011 PA 102. And it was not until more recently that our Legislature required feedback from classroom observations to be provided to teachers within 30 days after an observation. See MCL 380.1249(2)(e)(*v*), as amended by 2015 PA 173.

However, defendants' argument still misses the mark. While the classroom observation requirements were not specifically in effect at the time of plaintiff's layoff, our Legislature nonetheless required that a district utilize a performance evaluation system that was "fair" and "transparent." MCL 380.1249(1). Thus, while defendants were not statutorily required to use classroom observations as an evaluation tool during the 2011-2012 school year, whatever tool it did use nonetheless was required to be fair and transparent. Having chosen to use these observations as a tool to evaluate teacher effectiveness, it goes without saying that in order to have a fair and transparent evaluation system, the teachers should have been provided the results of their own observations. Further, while there was no specific timeframe for providing teachers with feedback from classroom observations, the statute required defendants to provide "*timely and constructive feedback.*" MCL 380.1249(1)(a) (emphasis added). And as previously explained, defendants indeed were required to give teachers opportunities for improvement. A system that observes teachers but gives no feedback and no opportunity to cure any deficiencies clearly fails to abide by these statutory requirements.

Defendants also contend that the version of MCL 380.1249 in effect at the relevant time did not require them to provide teachers with an individualized development plan (IDP). Defendants are correct in noting that the use of IDPs was not specifically mandated until the 2013-2014 school year. See MCL 380.1249(2)(a)(*iii*), as enacted by 2011 PA 102. But plaintiff did not allege that she was not provided an IDP in violation of the statute. Rather, she alleged that she was not given a "Plan of Improvement and an opportunity to improve." Again, defendants were required to give plaintiff timely and constructive feedback, MCL 380.1249(1)(a), and "ample opportunities for improvement," MCL 380.1249(1)(a)(*i*) and (*iv*). Plaintiff's allegations that she was given no improvement plan and no opportunity to improve her performance allege violations of these statutory provisions, which were applicable at the time plaintiff was laid off.[6]

Defendants also argue that plaintiff's claim that her evaluation was not rigorous, transparent, and fair fails to state a claim because the statute at issue, MCL 380.1249(1), speaks in terms of an overall evaluation *system*, not an individual teacher's evaluation. By attributing the adjectives "rigorous, transparent, and fair" only to the "performance evaluation system," defendants ignore the other mandates of the statute which require that "timely and constructive

---

[6] To the extent plaintiff now argues that defendants' own policies required that she be given such a plan, we agree that the issue is not relevant to the question of whether summary disposition was appropriately granted under MCR 2.116(C)(8). Such a motion is limited to the allegations of the pleadings, *Maiden*, 461 Mich at 119-120, and plaintiff did not plead any facts regarding defendants' policies in her amended complaint.

feedback" be given to the evaluated teacher, MCL 380.1249(1)(a), and which provide that teachers get "ample opportunities for improvement," MCL 380.1249(1)(d)(*i*) and (*iv*). As was explained above, plaintiff's complaint alleges deficiencies in her evaluation that correspond, at a minimum, to requirements of MCL 380.1249(1)(a), (1)(d)(*i*), and (1)(d)(*iv*). Further, plaintiff's allegations related to Lightsey's bias allege a cognizable claim under MCL 380.1248(1)(b). As plaintiff's amended complaint states viable claims for relief under *Summer I*, the trial court erred when it granted summary disposition pursuant to MCR 2.116(C)(8).

### C. SUMMARY DISPOSITION PURSUANT TO MCR 2.116(C)(10)

Finally, plaintiffs argue that the trial court erred when it found that defendants had, in fact, complied with the statutory requirements, and granted summary disposition pursuant to MCR 2.116(C)(10). Again, we agree.

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden*, 461 Mich at 120.]

As they did in the trial court, defendants argue that even if the allegations stated in plaintiff's complaint are actionable, the evidentiary record shows that defendants did not violate MCL 380.1248 or MCL 380.1249, and thus, summary disposition is appropriate pursuant to MCR 2.116(C)(10). The trial court seemingly agreed, explaining, "The Court finds that Defendants complied with the requirements of [MCL 380.]1249 by properly evaluating and sharing the evaluation with timely and constructive feedback with Plaintiff."

We begin with the general import of the complaint, which is that plaintiff was given a poor evaluation by Lightsey because Lightsey has a personal bias against plaintiff. Notably, nothing in the materials that defendants submitted to the trial court in support of their motion for summary disposition shows that Lightsey was not influenced by any personal bias. And while plaintiff did not provide any evidence that Lightsey acted impermissibly, it is important to note that discovery had not yet completed and Lightsey had not been deposed. As a result, summary disposition should have been denied on this ground alone.

Moreover, we reject defendants' argument that Lightsey "had no objective basis to believe that the evaluation would have any adverse effect on Plaintiff." Defendants rely on the fact that the ultimate decision to lay plaintiff off rested with defendants' human resources department. But defendants ignore the fact that Lightsey had to have known, under the statutory scheme introduced in 2011, that a poor evaluation could lead to plaintiff's termination or layoff. The statutory scheme makes it quite clear that those teachers with higher effectiveness ratings are to be given priority when it comes to personnel decisions. MCL 380.1248(1).

Further, in addition to the Legislature's directive, plaintiff presented evidence that under defendants' own policies regarding the evaluation of teacher performance, Lightsey should have

-14-

known that her evaluation had the capability to potentially affect plaintiff's continued employment. Under defendants' own policies:

> e. As soon as possible and not later than March 15th, the principal and/or director will meet with each teacher to complete an initial evaluation of teaching performance. The teacher is to see the principal's evaluation form, discuss it, sign it and receive a copy.

> f. Not later than March 22nd, the principal will meet with the Associate Superintendent for Curriculum and Instruction and/or the Associate Superintendent for Human Resources & Labor Relations and a cooperative decision will be reached concerning the future status of each teacher.

> g. If dismissal is to be recommended, a report must be submitted to the Board of Education prior to March 30th. The Board of Education shall meet to consider the recommendation and take appropriate action no later than June 1st.

Thus, under defendants' policies, it is clear that a poor evaluation is the first step toward dismissing a teacher from employment. The policies also require the principal to discuss the future status of each teacher no later than March 22 of each year. This policy creates a factual question regarding whether Lightsey was aware that the evaluation she prepared would lead to plaintiff's dismissal.

In any event, "[s]ummary disposition is generally premature if discovery is not complete." *Caron v Cranbrook Ed Community*, 298 Mich App 629, 645; 828 NW2d 99 (2012). It is true that summary disposition may nonetheless be appropriate where further discovery does not stand a fair chance of uncovering factual support for a party's claims. *Id*. But here, plaintiff's complaint contains detailed allegations regarding her dispute with Lees. Plaintiff attached to her complaint a letter confirming that plaintiff reported Lees's conduct to administration on several occasions and that while an investigation could not substantiate these particular allegations, the investigation did find "dereliction and neglect of duty on the part of the Thompson K-8 administrative team," which necessarily included Lightsey. And as explained above, there is evidence tending to show that Lightsey had reason to know that a poor evaluation of plaintiff would lead to her layoff. We cannot say that further discovery bears no possibility of providing further support to plaintiff's claims. To grant summary disposition on the basis of a single affidavit presented by defendants, and before plaintiff has deposed witnesses, including Lightsey, is premature.

Turning to plaintiff's allegations regarding the failure to provide her with feedback or opportunities to cure any deficiencies, defendants argue that the factual record so far developed undermines any such claims. Defendants submitted a document that shows that after the February 7, 2012 observation of plaintiff's classroom, plaintiff was given a formal evaluation form, which plaintiff signed/acknowledged on March 14, 2012. However, we cannot conclude as a matter of law that plaintiff getting this feedback five weeks after her evaluation was "timely" under MCL 380.1249(1)(a). Accordingly, on the record before us, this factual question is to be resolved by a fact-finder at trial, and summary disposition is not appropriate. See *White v Taylor*

*Distrib Co, Inc*, 275 Mich App 615, 625; 739 NW2d 132 (2007), aff'd 482 Mich 136 (2008); *Lewis v LeGrow*, 258 Mich App 175, 195-196; 670 NW2d 675 (2003).

In a similar vein, defendants argue that plaintiff was aware of her performance problems at least as early as September 15, 2011, and that she thus had ample time to cure her deficiencies. Defendants rely on a letter dated September 15, 2011, which explained that a meeting would be held on September 19, 2011, to discuss three concerns: reporting time, attendance-taking procedures, and classroom management. The letter stated that the meeting could result in discipline, and that plaintiff was entitled to have a union representative at the meeting. There is no evidence in the record demonstrating what occurred after this meeting, or if the meeting even took place. While perhaps this letter demonstrates some concerns defendants had, what is unknown is if these concerns were substantiated or whether the concerns were resolved at that point. This letter does not conclusively establish that plaintiff was aware of certain performance issues and had ample time to correct them. Further, the evidentiary record could be reasonably construed as showing that although plaintiff was aware that she had some problems in the area of classroom management, she did not know that her overall performance was anything less than effective until she received the evaluation that caused her to be laid off. Under the circumstances, and particularly in light of the fact that discovery had not been completed, the trial court prematurely granted summary disposition pursuant to MCR 2.116(C)(10).[7]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro

---

[7] Defendants also rely on performance evaluations performed in 2000, 2002, and 2003, which noted several concerns regarding plaintiff's teaching. Defendants contend that these evaluations further show that plaintiff should have been aware of her performance issues and had time to correct them. What is missing entirely from the record is any evidence of what occurred between 2003 and 2011. One could easily assume from the fact that plaintiff remained employed during these years that she made substantial improvements in these intervening years. Again, with discovery remaining incomplete, it is inappropriate to make any assumptions.

-16-