## ELIZA WILSON v. LEVI L. BOWEN.

*Malicious prosecution[1]—Evidence—Probable cause—Province of court and jury—Damages—Presumption in support of charge.*

1. In an action for malicious prosecution for causing plaintiff's arrest for willful trespass under How. Stat. § 9173, evidence of plaintiff's previous arrest for a *like* offense, of which fact the prosecuting attorney was informed by the defendant before making his second complaint, has no tendency to disprove malice, and is properly excluded.

2. In such a case, evidence that plaintiff was seen on defendant's premises committing a like trespass during a previous season, and of her prosecution for such trespass, has no legitimate bearing upon the questions of probable cause and malice, and is irrelevant upon any point involved in the issues being tried.

3. Good faith and honest motives, in the absence of probable cause for making a criminal complaint, are no defense in a suit for malicious prosecution.

4. To constitute probable cause, there must be such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the person arrested is guilty of the offense charged.

5. A person may have "probable cause" for making a criminal complaint from information received from others, which he honestly believes to be true, and of such a character, and obtained from such sources, that business men generally, of ordinary care, prudence, and discretion, would act upon it under such circumstances, believing it to be reliable.

6. In a suit for malicious prosecution it is the duty of the court to apply the law to the facts, and instruct the jury whether, if they find certain claimed facts to be established by plaintiff's testimony, they, taken as a whole, and all legitimate inferences to be drawn therefrom, constitute a *want* of probable cause, and, if so,

[1] See *Brand v. Hinchman*, 36 N. W. Rep. 664 ; *Haskins v. Ralston*, 37 Id. 45.

| | |
|---|---|
| 64 | 133 |
| 83 | 526 |
| 64 | 133 |
| 85 | 582 |
| 64 | 133 |
| 96 | 240 |
| 64 | 133 |
| 98 | 5 |
| 64 | 133 |
| 104 | 9 |
| 64 | 133 |
| 116 | 217 |
| 64 | 133 |
| 140 | $^9$467 |
| 64 | 133 |
| 142 | $^6$132 |
| 64 | 133 |
| 148 | $^8$657 |

whether such want of probable cause is rebutted by defendant's testimony by showing that defendant *had* probable cause to believe that the charge made in the complaint was true.

7. Defendant's eleventh request (see opinion, p. 137) was in the main correct, and should have been given, after eliminating the reference to the presence of plaintiff's daughter, etc. It contained information which, if actually believed, would have justified a man of rectitude, possessing and acting with ordinary care, prudence, and discretion, in making the complaint complained of.

8. Where error is assigned on the charge of the court on the ground that there was no such testimony in the case as the charge supposes and assumes, but the bill of exceptions does not profess to contain *all* the testimony,—

*Held*, that the presumption is that the charge was justified by the testimony given.

9. The purpose of an action of tort is to recover the damages sustained by the plaintiff from an injury done him by the defendant, compensation being the purpose in view; and, when that is accomplished, anything beyond, by whatever name called, is unauthorized, the jury not being allowed to mulct the defendant in an *additional* sum, to be handed over to plaintiff as a *punishment* for the wrong done him.

Error to Lenawee. (Howell, J.) Argued November 17, 1886. Decided January 6, 1887.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*A. L. Millard* and *C. E. Weaver,* for appellant.

*Bean & Lane,* for plaintiff.

CHAMPLIN, J. This case was submitted upon briefs, and we shall therefore notice only those assignments of error which are relied upon in the brief of defendant's counsel.

The action was brought to recover damages for a malicious prosecution.

Section 9173 of Howell's Statutes enacts that every person who shall willfully commit any trespass on the land of another by carrying away any roots, fruit, or plant there being,

in which he has no interest or property, without the license of the owner, of the value of five dollars or more, shall be punished by imprisonment in the county jail not more than 60 days, or by fine not exceeding $100.[1]

On the twenty-fourth of July, 1885, the defendant made complaint on oath, before a justice of the peace of the city of Adrian, that Eliza Wilson, on the twenty-fourth of July, 1885, with force and arms, unlawfully did enter upon the land of the said Levi L. Bowen, situated in the township of Franklin, in Lenawee county, and did then and there carry away 50 quarts of whortleberries (sometimes called huckleberries), then and there growing on said land, of the value of five dollars, without the license of him, the said Levi L. Bowen,—she, said Eliza Wilson, then and there not having any interest or property in said whortleberries,—contrary to the form of the statute, etc.

Upon this complaint a warrant was issued by the justice, and Mrs. Wilson was apprehended and brought before the magistrate, when an adjournment was had, and she was released from custody upon her own recognizance to appear. Another adjournment was had, and on the adjourned day the prosecuting attorney requested a dismissal of the case, which was done by the justice, and the prisoner discharged. Thereupon she brought this action.

The defendant, when on the stand as a witness in his own behalf, was proceeding to testify to the conversation which he had with the prosecuting attorney previous to entering the complaint against Mrs. Wilson, and he had narrated that he said to the prosecuting attorney that he—

"Had had to have her arrested three years ago for the same thing, and he wanted to know what was done with her at that time, and I told him she was let off by paying the costs and promising to keep away."

The witness then testified that he and the prosecuting at-

[1] See *People v. O'Brien*, 60 Mich. 8.

torney went to the magistrate's office, and witness asked the justice if he remembered that case, and he said he did. Counsel for defendant then asked this question:

"You may tell what other conversation there was between you and the prosecuting attorney, or between you and the justice."

This question was objected to, and a motion was made to strike out what the witness said he told the prosecuting attorney in regard to Mrs. Wilson's having been arrested, and what she did, as incompetent. The motion was granted, and the testimony stricken out. It is urged by counsel for defendant that the testimony was proper, as bearing upon the question of malice. We cannot see as it has the remotest bearing upon the question of malice. The fact itself, or the conversation in reference to it, certainly had no tendency to disprove malice. The two transactions had no relation to each other, and the testimony was rightly excluded.

The testimony of Helen Mattis, as to her seeing Mrs. Wilson upon the defendant's premises picking huckleberries any other season than the one complained of, was properly excluded, as also were the records before the magistrate of the proceedings had before him three years previously against Mrs. Wilson for a like offense. This testimony, it is claimed, was relevant upon the questions of probable cause and malice. The testimony had no legitimate bearing upon these questions, and was wholly irrelevant upon any point involved in the issues being tried. *Patterson v. Garlock*, 39 Mich. 449; 1 Whart. Ev. §§ 54, 56, and cases cited.

Eliza Lanning, a witness on the part of plaintiff, was asked, on cross-examination by defendant's counsel:

"Did you tell Mrs. Mattis, at that time, that Augusta Bowen was in the swamp, driving the plaintiff and others out ?"

To which she answered:

"I told her Augusta told me they were not going to allow

any one to pick. I didn't tell her that she was there driving them out. I said they did not allow any one to pick berries on Mr. Bowen's side."

Helen Mattis was then placed upon the stand, and asked:

"What did she [Eliza Lanning] tell you, if anything, about Augusta Bowen being up there, and driving out the plaintiff and others?"

This question was offered for the purpose of discrediting the witness Eliza Lanning in a material matter. It was objected to as incompetent, and ruled out. The conversation between Eliza Lanning and Helen Mattis about what Augusta Bowen did was wholly immaterial to the issue, and the testimony was not admissible for the purpose stated. 1 Greenl. Ev. § 455; Best, Ev. § 644.

Counsel for defendant requested the court to charge the jury that—

"If the defendant acted in good faith, and from honest motives, that would be a defense, and entitle him to your verdict, even if the plaintiff was in fact innocent, and there was not even probable cause for making the complaint."

This was refused, and rightly so. Good faith and honest motives, where there is not even probable cause for making a complaint of a criminal character against a person, is not a defense to an action for malicious prosecution. The fallacy of the proposition is so plain that no argument is required to refute it.

The eighth request to charge was properly refused, for the reason, among others, that it was based upon evidence not in the case.

The eleventh request is as follows:

"If the defendant had information, from persons whom he deemed truthful and worthy of credit, that the plaint-iff had, during the summer of 1885, been repeatedly, and two or more times when she was positively identified by his informants, seen in his whortleberry swamp picking and carrying away berries, and two or more other times

when, though his informant was not able to identify her positively by having seen her face, yet, from dress and size, his informant believed it to be she, and the defendant was satisfied from such information that it was the plaintiff, and such acts of the plaintiff were without his permission and against his will, and such different occasions were in the same season, and within a few days of each other; and that on several of these occasions, when so found picking berries, she had her daughter with her, a girl aged fourteen years, who was also picking berries, and that, when seen and fully identified by the informants of the plaintiff, she and her daughter had each several quarts of berries picked, and remained in the swamp picking berries for a considerable time after the berries were so seen and the amount noticed by his informants, and the berries picked were carried away by the plaintiff and her daughter, and the defendant had no means of knowing what quantity of berries had thus been taken by the plaintiff other than the information so received, and an estimate therefrom, and he actually believed, from such information and estimate, that the quantity so taken by her during the season was over fifty quarts,—this would be probable cause for making such complaint."

The court charged that,—

"To constitute probable cause in a criminal prosecution, there must be such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the person arrested is guilty of the offense charged.

"A person may have probable cause for making a criminal complaint from information received from others merely; but in such case he must honestly believe the information thus obtained to be true, and the information must be of that character, and obtained from such sources, that business men generally, of ordinary care, prudence, and discretion, would act upon it under such circumstances, believing it to be reliable. But a man's mere belief that another is guilty is not probable cause, unless that belief is founded upon reasonable grounds of suspicion, or upon information of such a reliable kind, and from such reliable sources, as I have mentioned above; and a mere conjecture or suspicion is not probable cause, but the facts must be such as would induce an impartial and reasonable mind to believe in the guilt of the accused. A man has no right to start a criminal prosecution against another upon a mere conjecture that he has

committed crime, when neither the conduct of the accused apparent to the accuser, nor the information he has received, is sufficient to warrant and justify the suspicion before pointed out. There can be no justification in such case, and no probable cause."

It was said in *Hamilton v. Smith*, 39 Mich. 227, that—

"It is the province of the jury to ascertain what state of facts exists, and it is the province of the judge to decide whether that state of facts constitutes probable cause, and the law intends that these functions shall be kept distinct. But as the law appropriate to the facts cannot be laid down unequivocally until it is ascertained what the facts are, it is found necessary, where they are in dispute, to submit the whole subject to the jury under proper instructions as to the rule of law to be applied, according as they find one state of facts or another. The law belonging to any state of facts subject to be found being given to them in advance, they are enabled, on coming to an agreement as to what is the true state of facts, to apply the law delivered to them as belonging thereto, and formulate the result."

The court, in the charge above quoted, properly defined probable cause, and when it would be a defense to an action for malicious prosecution. But something more than this was required of the court. It was the duty of the court to apply the law to the facts, and to instruct the jury whether, if they found certain facts claimed by the testimony introduced by the plaintiff to be established, they, taken as a whole, and all legitimate inferences to be drawn therefrom, constituted a want of probable cause; and if they found, from plaintiff's testimony, a want of probable cause, then whether, from the testimony of defendant, the want of probable cause was rebutted by showing that defendant had probable cause to believe that the charge made in the complaint was true. We do not find in the charge that the judge instructed the jury as to the rule of law to be applied as they should find one state of facts to exist or another. The jury were left to find the fact, and apply the definitions of probable cause and want of probable cause without any aid from the court, and

without being told what facts in the case, if found from the testimony, would constitute probable cause, or show a want of probable cause.

The eleventh request was in the main correct, and should have been given substantially as requested. The fact that the daughter was also picking berries might and ought to have been omitted, but the balance of the request was proper, and ought to have been given, or substantially covered by the charge. It contained information concerning facts derived from his family and neighbors, which, if actually believed, would have justified a man of rectitude, possessing and acting with ordinary care, prudence, and discretion, in making the complaint.

It is claimed that the charge of the court relative to that branch of the defense which was based upon the advice of the prosecuting attorney is erroneous, because there was no such testimony in the case as the charge supposes and assumes. As the bill of exceptions does not profess to contain all the testimony given upon the trial, we cannot determine whether the error is well assigned or not. The presumption in such case is that there was testimony given in the case which justified the court in charging as he did, and that no error in that respect was committed.[1]

Upon the question of damages, in case the jury found the plaintiff was entitled to recover, the judge instructed the jury as follows:

" If you find the defendant guilty in this case, the jury have the right to give the plaintiff such an amount of damages as will compensate her for all her expenses and trouble she was put to in defending herself from the charge and examination before the justice, and also for the pain, anguish, and suffering she has endured in consequence of the charge and arrest, and in consequence of a wrongful charge being brought against her, and the public scandal occasioned thereby, and

[1]See *Manning v. Bresnahan*, 63 Mich. 584 (head-note 4); *Gass v. Van Wagner*, Id. 610 (head-note 1).

also such sum as will punish the defendant for the wrong he has willfully and maliciously done to the plaintiff.''

The subject of damages in cases of this sort was discussed in *Hamilton v. Smith*, 39 Mich. 230, and the authorities cited showing the principles upon which the Court proceeded in applying the rule of damages in cases of tort. It was observed in that case that, in actions for malicious prosecution,—

"The elements of damage were the expense of the plaintiff, if any, in and about the prosecution complained of, to protect himself; his loss of time; his deprivation of liberty, and the loss of the society of his family; the injury to his fame; personal mortification; and the smart and injury of the malicious arts and acts and oppression of the parties."

The subject was again discussed in *Stilson v. Gibbs*, 53 Mich. 283. In that case the circuit judge instructed the jury that if certain acts were done willfully, maliciously, and wantonly, the jury might find a verdict for exemplary or punitive damages, and, in estimating the amount of their verdict, they would add to the exemplary damages, if they found any, the plaintiff's actual damages, with interest, concerning which this Court in disposing of the case, said:

"The principal fault in the instructions is to be found in the distinct presentation of the idea that the jury, after estimating the *actual* damages of the defendant, might go further, and give a further sum, limited only by their discretion, by way of punishment and example."

It is not necessary to repeat the discussion. It is summed up by saying that the purpose of an action of tort is to recover the damages which the plaintiff has sustained from an injury done him by the defendant; that *compensation* to the plaintiff is the purpose in view; and, when that is accorded, anything beyond, by whatever name called, is unauthorized. It is not the province of the jury, after *full* damages have been found for the plaintiff, so that he is fully *compensated* for the wrong committed by the defendant, to

mulct the defendant in an additional sum, to be handed over to the plaintiff as a *punishment* for the wrong he has done to the plaintiff.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.