*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JENAA GRIER,

        Plaintiff-Appellant,

v

SHARON MCCLURE, DANIEL NEILSON,
GRANT BURNS, and DEMETRIOUS CURTIS,

        Defendants-Appellees,

and

DETROIT POLICE DEPARTMENT and CITY OF
DETROIT,

        Defendants.

UNPUBLISHED
January 26, 2023

No. 359757; 360727
Wayne Circuit Court
LC No. 19-015558-NZ

Before: YATES, P.J., and JANSEN and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals[1] of this tort action implicating the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, plaintiff, Jenaa Grier, appeals as of right[2] the trial court's

---

[1] *Grier v McClure*, unpublished order of the Court of Appeals, entered April 6, 2022 (Docket Nos. 359757 and 360727).

[2] The individual defendants challenge our jurisdiction to hear the appeal in Docket No. 360727 as of right, claiming plaintiff improperly appealed from the order denying her motion for reconsideration, which is not a final order under MCR 7.202(6)(a). We have already denied the individual defendants' motion to dismiss on the basis of the same argument. *Grier v McClure*, unpublished order of the Court of Appeals, entered April 29, 2022 (Docket No. 360727). We have not been convinced we were wrong to do so. Our review of plaintiff's claim of appeal and jurisdictional checklist reveals plaintiff filed a timely appeal of the summary disposition order,

order granting summary disposition in favor of defendants, Lieutenant Sharon McClure, Sergeant Daniel Neilson, Officer Grant Burns, and Officer Demetrious Curtis ("the individual defendants"), under MCR 2.116(C)(7) and (C)(10). Later, the trial court denied plaintiff's motion to reconsider the order granting summary disposition in favor of the individual defendants, which plaintiff also challenges in this appeal. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff and the individual defendants worked for defendant, the Detroit Police Department (DPD), a subunit of defendant, the city of Detroit ("the city defendants," collectively).[3] Plaintiff owned a home in Detroit, Michigan, and lived next to Deandra Moss and LaTonya Moss, a married couple. The Mosses' and plaintiff disputed ownership over a small strip of land bordering plaintiff's driveway and the Mosses' yard. On March 22, 2019, plaintiff was at work when her son called her to inform her the Mosses had removed a gate installed on the disputed area. Plaintiff testified her son called 911.

Plaintiff went to speak with Lieutenant McClure, with whom plaintiff shared a working relationship. Lieutenant McClure told plaintiff to speak with another officer who was more familiar with civil disputes. Plaintiff did so, but still had concerns, so spoke to Lieutenant McClure again. Lieutenant McClure testified she told plaintiff to call her lawyer and to not touch or destroy any property.

When plaintiff arrived at home, she saw her gate had been taken down and the Mosses had begun installing a fence on the disputed area. Pertinently, there were fencepoles placed in concrete-filled holes. Plaintiff parked her car in the driveway, got out, walked over to the disputed area, and pulled all of the poles out of the wet concrete. Plaintiff admitted to doing so, and her actions were caught on the Mosses' surveillance and cell phone videos. The Mosses called the police and Sergeant Neilson, Officer Curtis, and Officer Burns were dispatched to the scene. Once there, they heard from the Mosses that plaintiff had destroyed their fencepoles, which they paid to have installed. They showed the officers a land survey, which they informed the officers showed the Mosses owned the disputed area of land. The Mosses also told the police they had plaintiff on video pulling out the poles.

Sergeant Neilson called Lieutenant McClure and relayed the information. Lieutenant McClure stated she believed they had probable cause to arrest plaintiff for malicious destruction of property, MCL 750.377a(1)(c)(*i*) or (d). Sergeant Neilson apparently agreed, especially after

which is a final order under the court rules, and appealable as of right. *Id*.; MCR 7.203(A)(1); MCR 7.204(A)(1)(d). Moreover, even if we were to agree with the individual defendants, "we would still, in the interest of judicial economy, exercise our discretion to treat [the] claim of appeal as an application for leave to appeal, grant leave, and address the [] issue presented." *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

[3] The city defendants were summarily disposed from the litigation on the basis of governmental immunity and are not parties to this appeal, but will be discussed as necessary for a full understanding of the facts.

speaking with plaintiff, who admitted she pulled out the fencepoles. Plaintiff did explain there was a dispute about who owned the land, the Mosses destroyed her gate, and her son called 911. Sergeant Neilson had plaintiff stow her gun safely, made sure she had a coat, put her in handcuffs, and she was taken to Officer Curtis and Officer Burns's scout car. On the way to the Detroit Detention Center, plaintiff suffered a panic attack. The officers changed course to Detroit Receiving Hospital where plaintiff was treated in the emergency room, released, and taken to the jail. The charges against plaintiff eventually were dropped.

After defendants refused to pay plaintiff's demands for alleged damages, she initiated the instant litigation, filing a complaint alleging one count each of false imprisonment, false arrest, intentional infliction of emotional distress (IIED), and ordinary negligence. Before the city defendants were dismissed from the case, plaintiff submitted discovery requests for the individual defendants' bodycam footage. After the city defendants were dismissed, plaintiff also requested the run reports for March 22, 2019, all police reports for plaintiff and her neighbor's addresses from January 2012 to the present, and the individual defendant's notes regarding the incident that occurred on March 22, 2019. The individual defendants asserted they could not comply with the discovery requests because they did not have possession or control of the requested evidence. The parties litigated the dispute, but plaintiff also sent subpoenas and a Freedom of Information Act (FOIA) request to Detroit, as a nonparty, for the same evidence.

Eventually, the individual defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(10). Relevant to the present appeal, the individual defendants argued that plaintiff's intentional tort claims could not survive summary disposition because she could not prove her arrest was unlawful, and plaintiff relied on her arrest being without probable cause and without a warrant for all three of her intentional tort claims. As for the ordinary negligence claim, the individual defendants noted plaintiff had only pleaded that claim again the city defendants.

Plaintiff argued it was premature to grant summary disposition in favor of the individual defendants because there remained outstanding discovery. She asserted the requested evidence would support her claims. Plaintiff also contended the individual defendants did not have probable cause to believe she committed malicious destruction of property because they knew there was a civil dispute, were not trained to read the land survey, ignored her claim the Mosses destroyed her gate, and failed to account for the 911 call of plaintiff's son.

Ultimately, the trial court agreed with the individual defendants and granted their motion for summary disposition. Plaintiff moved for reconsideration, largely challenging the pending discovery and making the same assertions about probable cause. The trial court denied the motion. These appeals followed.

## II. SUMMARY DISPOSITION

Plaintiff contends summary disposition was improperly granted because she was awaiting relevant discovery from Detroit and there remained factual questions to be decided by a jury. We disagree.

To preserve an issue for appeal, "a party need only bring the issue to the [trial] court's attention—whether orally or in a brief or both." *Glasker-Davis v Auvenshine*, 333 Mich App 222,

-3-

228; 964 NW2d 809 (2020). In plaintiff's summary disposition response and sur-reply briefs, she argued the individual defendants should not be granted summary disposition because there remained questions of fact regarding her tort claims and because there remained outstanding discovery that would support her allegations, thereby preserving those issues for our review. *Id*.[4]

## A. STANDARD OF REVIEW

The individual defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). In its order granting summary disposition, the trial court did not indicate under which subrule it was granting the motion. However, because the individual defendants' arguments were all partially reliant on documentary evidence and testimony, we will consider the order assuming it was granted under MCR 2.116(C)(7) and (C)(10), which allow consideration of evidence beyond the pleadings, unlike motions filed under subrule (C)(8). See MCR 2.116(G)(5).

"This Court reviews de novo questions of law regarding governmental immunity," and "also reviews de novo motions for summary disposition under MCR 2.116(C)(7)." *Tellin v Forsyth Twp*, 291 Mich App 692, 698; 806 NW2d 359 (2011). "Under MCR 2.116(C)(7), all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 414; 875 NW2d 242 (2015) (quotation marks and citation omitted). "If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). "However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*.

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

---

[4] The individual defendants disagree with the above analysis, arguing plaintiff was required to respond to their renewed motion for summary disposition and object to the trial court's last order regarding discovery to properly preserve any arguments. A simple reading of this Court's decision in *Glasker-Davis* shows defendant's argument lacks merit. *Id*.

B. ALLEGED GENUINE ISSUES OF MATERIAL FACT

Plaintiff's four-count complaint alleged three intentional torts: false arrest, false imprisonment, and IIED. "Importantly, a tort action against a governmental entity generally raises two issues: (1) whether the plaintiff has pleaded in avoidance of governmental immunity, and (2) whether the plaintiff can establish the elements of his or her claim." *Sullivan v Michigan*, 328 Mich App 74, 79-80; 935 NW2d 413 (2019). The individual defendants have focused solely on the latter inquiry—whether plaintiff can establish the elements of her claims of false arrest, false imprisonment, and IIED.

Plaintiff's false arrest and false imprisonment tort claims are best analyzed together. In the simplest terms, "[a] false arrest is an illegal or unjustified arrest." *Lewis v Farmer Jack Div, Inc*, 415 Mich 212, 218; 327 NW2d 893 (1982). A claim of false arrest requires proof the individual defendants "participated in an illegal and unjustified arrest, and that [they] lacked probable cause to do so." *Walsh v Taylor*, 263 Mich App 618, 626; 689 NW2d 506 (2004). In other words, "[a] false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person arrested is irrelevant." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 18; 672 NW2d 351 (2003). "False imprisonment," on the other hand, "has been defined by this Court as an unlawful restraint on a person's liberty or freedom of movement." *Id*. at 17. "The elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Walsh*, 263 Mich App at 627 (quotation marks and citations omitted). Additionally, in a claim of false imprisonment, "[t]he restraint must have occurred without probable cause to support it." *Id*.

As summarized by our Supreme Court, "the existence of probable cause is relevant to the analysis; a claim of false arrest or false imprisonment cannot be sustained if the arrest was legal." *Odom v Wayne County*, 482 Mich 459, 481; 760 NW2d 217 (2008). Stated slightly differently, "[t]o prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Peterson Novelties*, 259 Mich App at 18. The sole dispute with regard to plaintiff's claims of false arrest and false imprisonment in this appeal is whether the individual defendants had probable cause to arrest plaintiff for committing malicious destruction of property.

Under MCL 750.377a(1)(c)(*i*), "[a] person who willfully and maliciously destroys or injures the personal property of another person is guilty . . . of a misdemeanor," if "[t]he amount of the destruction or injury is $200.00 or more but less than $1,000.00." Similarly, a person is still guilty of a misdemeanor "[i]f the amount of the destruction or injury is less than $200.00 . . . ." MCL 750.377a(1)(d). As explained by this Court, "[t]o be convicted of malicious destruction of property, a [person] must have intended to injure or destroy the property in question." *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999). Generally, "want of probable cause is a question of law to be determined by the court." *Matthews v Blue Cross Blue Shield of Mich*, 456 Mich 365, 381; 572 NW2d 603 (1998). However, "[w]here the facts on which the issue turns are in dispute, the question is for the jury." *Id*. at 381-382.

"Probable cause that a particular person has committed a crime is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged." *Peterson*

*Novelties*, 259 Mich App at 19 (quotation marks and citations omitted). According to our Supreme Court:

> A person may have probable cause for making a criminal complaint from information received from others merely; but in such case, he must honestly believe the information there obtained to be true, and the information must be of that character, and obtained from such sources, that business men generally, of ordinary care, prudence, and discretion, would act upon it under such circumstances, believing it to be reliable. [*Matthews*, 456 Mich at 388, quoting *Wilson v Bowen*, 64 Mich 133, 138; 31 NW 81 (1887).]

"Probable cause is not capable of being precisely defined; rather, it is a commonsense concept dealing with practical considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons, not legal technicians." *Peterson Novelties*, 259 Mich App at 19, citing *Ornelas v United States*, 517 US 690, 695-696; 116 S Ct 1657; 134 L Ed 2d 911 (1996). The existence of certain ameliorating or mitigating circumstances does not necessarily mean an officer did not have probable cause to believe a person committed a crime. *Matthews*, 456 Mich at 390-391. Further, "where there are sufficient facts to warrant a prudent person in [an officer]'s position to believe that a crime was committed and the defendant committed it, the failure to make a further investigation does not negate probable cause." *Koski v Vohs*, 426 Mich 424, 436; 395 NW2d 226 (1986).

Here, the individual defendants had probable cause to believe plaintiff committed malicious destruction of property. Sergeant Neilson, Officer Curtis, and Officer Burns were dispatched to the scene after the Mosses called 911. Upon arrival, the Mosses informed the officers plaintiff pulled up fenceposts the Mosses paid to have installed on the disputed area of property. The Mosses showed the officers a copy of the land survey, which the Mosses told the officers showed the Mosses owned the questioned area of property. The officers had no reason to disbelieve the Mosses or the survey. They also were told the Mosses had recordings, from their cell phones and surveillance cameras, showing plaintiff committing the act. The Mosses averred they showed the videos to the officers. When the officers went to speak with plaintiff, she admitted she pulled out the poles, which she presumed the Mosses paid to have installed.

As discussed above, the statute regarding malicious destruction of property proscribes the intentional destruction or injury of the property of another. *Nelson*, 234 Mich App at 459. There is no dispute plaintiff committed the act of pulling the poles out of the concrete holes, considering she admitted such at her deposition and when speaking to the police on March 22, 2019. The parties also do not appear to dispute that plaintiff's actions caused injury to the Mosses' property—plaintiff admits the Mosses' likely paid to have the fenceposts installed, which she then destroyed. Considering the police were aware of video and eyewitness evidence showing plaintiff purposefully removed the poles, there also appears to be no dispute plaintiff intended to destroy the personal property at issue.

Plaintiff tried to explain there was a civil dispute about who owned the land, and asserted that the Mosses started the dispute by destroying her gate, and that her son called 911 to report the Mosses' behavior. However, given all of the information the police had been provided, the individual defendants had a "reasonable ground of suspicion, supported by circumstances

sufficiently strong in themselves to warrant a cautious person in the belief that the accused is guilty of the offense charged." *Peterson Novelties*, 259 Mich App at 19 (quotation marks and citations omitted). Indeed, the only thing reasonably in dispute was whether plaintiff or the Mosses owned the land on which the poles had been installed. But such does not defeat the individual defendants' probable cause to believe the land belonged to the Mosses. After all, plaintiff only told police there was a dispute about who owned it, but the Mosses insisted they owned the property and provided a land survey. As our Supreme Court noted, the officers were permitted to believe the Mosses, especially considering they had documentary support. *Matthews*, 456 Mich at 388, quoting *Wilson*, 64 Mich at 138 (holding that "[a] person may have probable cause . . . from information received from others merely;" however, the person "must honestly believe the information thus obtained to be true, and the information must be of that character, and obtained from such sources, that business men generally, of ordinary care, prudence, and discretion, would act upon it under such circumstances, believing it to be reliable.").

Instead of challenging the quality of the evidence provided to the police by the Mosses,[5] plaintiff contends the individual defendants were not properly trained to read a land survey. Indeed, all of the individual defendants acknowledged in their depositions they were not trained to read and interpret such surveys. Nevertheless, they believed the Mosses when they said the land survey showed the disputed property belonged to them. The individual defendants' inability to definitively verify the Mosses owned the disputed property was both not in dispute, and did not defeat probable cause. Plaintiff's argument the individual defendants should have verified who owned the property before arresting her ignores relevant caselaw establishing mitigating or ameliorating factors do not defeat probable cause. *Matthews*, 456 Mich at 390-391. Plaintiff has successfully identified a mitigating circumstance—the individual defendants could not be 100% certain the Mosses owned the disputed property. But this analysis is about probable cause. Even if further investigation could have or would have led the individual defendants to believe plaintiff owned the property, such still would not be enough to defeat the probable cause that existed before such investigation. *Koski*, 426 Mich at 436 ("[W]here there are sufficient facts to warrant a prudent person in [an officer]'s position to believe that a crime was committed and the defendant committed it, the failure to make a further investigation does not negate probable cause.").

Plaintiff also asserts the individual defendants did not have probable cause because they ignored her claims that her son called 911 after discovering the Mosses destroyed plaintiff's gate. The logic behind this argument is not immediately apparent. Plaintiff has cited no caselaw, nor does there appear to be any, suggesting plaintiff has some right to destroy property in retribution for her property being destroyed. The ultimate question at issue is whether the individual

---

[5] This is likely because the quality of the evidence has been adjudicated in a quiet-title action and the Mosses won. While that result is certainly telling, the individual defendants' attempts to rely on the quiet-title litigation is misplaced. Probable cause is determined on the basis of the information available to the officers at the time the arrest occurred. *Peterson Novelties*, 259 Mich App at 19. Because, at the time of plaintiff's arrest, the adjudication had yet to occur, the individual defendants obviously did not and could not know how any litigation regarding the property dispute would have gone. Therefore, because it was not a circumstance considered by the individual defendants at the time of arrest, it is not relevant to the analysis of the issue. *Id*.

defendants had probable cause to believe *plaintiff* committed malicious destruction of property. Consequently, whether the dispute that led to plaintiff's actions were "started" by the Mosses or her son called 911 first are irrelevant to the present analysis. The same holds true for plaintiff's argument that the individual defendants knew plaintiff and the Mosses were involved in a civil dispute. For the reasons discussed above, the individual defendants had probable cause to believe plaintiff committed a misdemeanor by destroying the Mosses' property. As a result, there was no genuine issue of material fact that the individual defendants' arrest of plaintiff was lawful. Consequently, because "a claim of false arrest or false imprisonment cannot be sustained if the arrest was legal," the trial court properly granted summary disposition in favor of the individual defendants regarding those two claims. *Odom*, 482 Mich at 481.

Plaintiff next argues there was a genuine issue of material fact with respect to her IIED claim. This Court, in a recent opinion, restated the law regarding IIED claims:

> "To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citation omitted). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 603; 374 NW2d 905 (1985) (quotation marks and citation omitted).

> The trial court initially determines "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Hayley*, 262 Mich App at 577. "But where reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery." *Id*. [*Swain v Morse*, 332 Mich App 510, 534; 957 NW2d 396 (2020).]

The individual defendants argued, and the trial court apparently agreed, that plaintiff had not supported her claim the individual defendants' behavior was extreme or outrageous as required for the first element of an IIED claim. On appeal, plaintiff argues solely that the individual defendants' outrageous or extreme behavior was their arrest of plaintiff without probable cause or a warrant. As has been discussed above, there is no genuine issue of material fact the individual defendants did have probable cause to arrest plaintiff for malicious destruction of property. Therefore, plaintiff's IIED claim is premised on a legal assertion regarding probable cause that is entirely unsupported by the record. Plaintiff has not alleged anything unusual or violent about her arrest. In fact, plaintiff testified the arrest was ordinary, but for her incorrect belief the arrest was unlawful. Because plaintiff's sole alleged "outrageous and extreme" conduct did not occur, i.e., there was no unlawful arrest, plaintiff's IIED claim fails as a matter of law. *Swain*, 332 Mich App

at 534. The trial court, therefore, properly granted summary disposition on this claim in favor of the individual defendants. *Id.*

Plaintiff's final claim in her complaint was for negligence. However, under this issue, plaintiff does not challenge the trial court's grant of summary disposition of her negligence claim. Instead, she only alleges error with the trial court's decision because she believes further discovery would have supported the negligence claim. Because plaintiff has not challenged the trial court's decision regarding her negligence claim in this issue, this Court has nothing to consider.[6]

## C. PENDING DISCOVERY

Turning to plaintiff's assertion that summary disposition was premature given that discovery was outstanding, we note that "[g]enerally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 231; 933 NW2d 363 (2019) (quotation marks and citations omitted). However, "summary disposition may nonetheless be appropriate when further discovery does not stand a fair chance of uncovering factual support for a party's claims." *Summer v Southfield Bd of Ed*, 324 Mich App 81, 108; 919 NW2d 641 (2018).

Plaintiff begins by asserting that her requests for discovery from Detroit, as a nonparty, were proper and with which Detroit should have complied. There does not appear to be a significant dispute regarding that contention. Certainly, the individual defendants have not argued in this appeal that plaintiff could not discover bodycam footage and police reports from the individual defendants as part of this litigation. Thus, for the purposes of this appeal, we will presume plaintiff's discovery requests were proper, and the sole hold up was Detroit's delayed response.

That conclusion, however, does not end the analysis of this issue. Instead, the trial court's summary disposition order still was not premature if "further discovery does not stand a fair chance of uncovering factual support for a party's claims." *Summer*, 324 Mich App at 108. Such is the case here. For her intentional tort claims—false imprisonment, false arrest, and IIED—plaintiff solely focuses on whether the individual defendants had probable cause to believe she committed a crime. Lack of probable cause is an element of the false imprisonment and false arrest claims, and plaintiff asserts her arrest without probable cause was the outrageous and extreme behavior required for her IIED claim. Therefore, the relevant question is whether "further discovery does not stand a fair chance of uncovering factual support" regarding the issue of probable cause. *Id.*

Plaintiff argued against probable cause on four grounds—the individual defendants were not qualified to verify the Mosses' land survey, knew plaintiff and the Mosses were in a civil dispute, ignored plaintiff's claims the Mosses started the dispute, and failed to consider plaintiff's son called 911. Evidence from the individual defendants' police reports and bodycams could not

---

[6] Moreover, even if plaintiff had attempted to argue summary disposition of the negligence claim was improper, she would have failed. A simple review of her complaint shows she did not plead any alleged negligence against the individual defendants. Plaintiff only asserts the city defendants were negligent for releasing her medical information without redacting it.

support plaintiff's arguments regarding probable cause. First, the individual defendants admitted during deposition they were not trained to read property surveys. As discussed above, while plaintiff successfully identified a mitigating circumstance regarding whether the individual defendants definitively knew to whom the disputed property belonged, such did not defeat the individual defendants' probable cause to believe plaintiff committed a crime. *Matthews*, 456 Mich at 390-391. The individual defendants were not required to perform further investigation until they were absolutely certain the Mosses owned the disputed property. *Koski*, 426 Mich at 436. Therefore, even if the bodycam footage and police reports outright stated the individual defendants were not certified to read a land survey, such would not make a difference in the litigation for the reasons stated above. Moreover, considering this is a motion for summary disposition, we, and the trial court below, already were required to view the evidence regarding the individual defendants' ability to read a land survey in the light most favorable to plaintiff. *Maiden*, 461 Mich at 120.

Plaintiff also argued there was a factual dispute regarding probable cause because this was a civil dispute, the Mosses started the dispute by destroying her property, and her son called 911. As discussed in greater depth above, those factual arguments are irrelevant to the issue of probable cause. It is beyond dispute a civil matter becomes criminal when there is probable cause to believe a crime was committed, and who started a dispute or who called 911 first is not a defense to the crime alleged against plaintiff. Even if plaintiff's discovery showed everything she believes it would—bodycam footage showing she complained to the individual defendants her property was destroyed, the individual defendants' reports and bodycam recordings showing a destroyed gate, and the 911 logs showing plaintiff's son called police before the Mosses—the above analysis related to probable cause would be utterly unchanged. The analysis already accounted for all of those things being true, by considering the evidence in the light most favorable to plaintiff. *Maiden*, 461 Mich at 120. In short, the individual defendants were not required to engage in further investigation once they established probable cause, and mitigating or ameliorating circumstances, such as those identified by plaintiff, cannot negate probable cause once it has formed. *Matthews*, 456 Mich at 390-391; *Koski*, 426 Mich at 436. Thus, the pending discovery did not render the trial court's grant of summary disposition premature. *Summer*, 324 Mich App at 108.

Plaintiff has not identified any other evidence she believes she will discover and support her intentional tort claims. Interestingly, in her brief on appeal, plaintiff asserts, "[a]s of this writing, Plaintiff is still not in possession of the requested materials." However, in her motion for relief from judgment with the trial court, plaintiff stated, "[t]hat on or around January 19, 2022, Plaintiffs [FOIA] request, A2 l-l 0791, was fulfilled and she received the requested documentation and body-cam footage." Thus, it seems plaintiff did receive the sought discovery, perhaps the same day she filed her amended brief on appeal. Plaintiff did not move to again amend her brief or file a reply brief to clarify the issue. In any event, with the benefit of the evidence in hand, in her motion for relief from judgment, plaintiff only identified two things from the discovery she believes supported her claims:

> The provided for body-cam footage provides that the arresting officers were aware that the dispute between Plaintiff and her neighbors was a civil dispute. Further, the footage goes to show that Defendant [Sergeant Neilson] was aware that this was a civil dispute and stated that he was not going to be guided by [internal affairs] ("IA") and that they were going to "medically" take her in.

-10-

As established above, the individual defendants have not disputed the fact plaintiff's interactions with the Mosses *began* as a civil dispute. Sergeant Neilson's alleged acknowledgment of such on a bodycam does not change the analysis above. The civil dispute between neighbors became a criminal issue when the individual defendants had probable cause to believe plaintiff committed malicious destruction of property. Plaintiff also relies on Sergeant Neilson's apparent statement he was not going to be guided by IA and would take plaintiff in medically.

First, it is unclear what this means and plaintiff does not attempt to explain it. Lieutenant McClure testified she told Sergeant Neilson to contact IA about plaintiff's arrest. However, there is nothing in the record to suggest what "guided by IA" would even entail. Second, the evidence, despite plaintiff's reliance on it, does not support her claim. It establishes, at most, Sergeant Neilson planned to take plaintiff to the hospital. Plaintiff was indeed taken to the hospital. Consequently, Sergeant Neilson's statement about taking plaintiff in "medically" was not new information. Plaintiff had a panic attack and was treated at the Detroit Receiving Hospital emergency room. In short, because plaintiff has not identified any plausible information from the discovery that would change the outcome regarding the individual defendants having probable cause to arrest plaintiff, summary disposition was not premature. *Summer*, 324 Mich App at 108.

Plaintiff next argues, in the broadest possible terms,[7] that the outstanding discovery would support her negligence claim against the individual defendants. However, as discussed above, plaintiff has not alleged a negligence claim against the individual defendants. All of her allegations regarding negligence are regarding the city defendants, who have long been dismissed from this case. Thus, regardless of any possible discovery, plaintiff's negligence count of her complaint cannot survive summary disposition.[8]

## III. RECONSIDERATION

Plaintiff next contends that the trial court abused its discretion when it refused to reconsider its summary disposition order. "This Court reviews a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion." *Farm Bureau Ins Co v TNT Equip, Inc*,

---

[7] Plaintiff's brief on appeal states:

> Defendants aver in their Reply to Response that the "Plaintiff is unable to present admissible evidence sufficient to sustain a viable negligence claim against Defendants." This is a mischaracterization. In reality, Plaintiff has been attempting to obtain said evidence for almost 2 years, but such attempts have been repeatedly thwarted.

[8] We also note plaintiff only made a claim of ordinary negligence in her complaint. The individual defendants, though, are individual employees. "An employee of a governmental agency acting within the scope of his or her authority is immune from tort liability unless the employee's conduct amounts to gross negligence that is the proximate cause of the injury." *Kendricks v Rehfield*, 270 Mich App 679, 682; 716 NW2d 623 (2006). Because plaintiff has only alleged ordinary negligence, the individual defendants would be entitled to immunity from the claim. *Id*. For this reason also, then, the trial court properly granted summary disposition in their favor.

328 Mich App 667, 672; 939 NW2d 738 (2019). "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes." *Id*.

"Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted." MCR 2.119(F)(3). "The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." *Id*. "The trial court has considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." *Auto-Owners Ins Co v Compass Healthcare PLC*, 326 Mich App 595, 608; 928 NW2d 726 (2018) (quotation marks and citation omitted). "[A] court has full discretion to decline to consider evidence presented with a motion for reconsideration that could have been presented the first time the issue was argued." *Yachcik v Yachcik*, 319 Mich App 24, 42; 900 NW2d 113 (2017) (quotation marks and citation omitted).

Plaintiff primarily focuses her argument on the issue of discovery. As she did above, plaintiff insists the outstanding discovery would have supported her claims, and therefore, summary disposition was premature. Notably, these are the exact same arguments plaintiff made regarding summary disposition. The court rules are clear that, "a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted." MCR 2.119(F)(3). The trial court, impliedly, considered all of these arguments when they were made by plaintiff in her briefing regarding summary disposition. Therefore, it was not an abuse of discretion to deny plaintiff's motion for reconsideration "which merely presents the same issues ruled on by the court, either expressly or by reasonable implication . . . ." *Id*.

Affirmed.

/s/ Christopher P. Yates
/s/ Kathleen Jansen
/s/ Deborah A. Servitto